### Richmond.

GEORGIA HOME INSURANCE CO. v. BARTLETT, TRUSTEE.

APRIL 4, 1895.

1. FIRE INSURANCE—*Change of Title or Possession—Trustees—Receiver.*—A policy of insurance against loss by fire, issued at the instance of trus-· tees, on property on which there is a deed of trust to secure creditors— the loss, if any, payable to the trustees as their interest may appear—and which contains a provision that "if any change takes place in the title, or possession of the property, whether by sale, or judicial decree, with- out notice to the company and its consent endorsed thereon, then the policy shall be void," is not avoided by the resignation of the trustees and the substitution of another trustee in their room and stead, nor by the appointment of a receiver in the place of the trustees to take charge of the property and let the same and collect the rents. The change contemplated by the policy refers only to such a sale or disposition of the property as causes all interest of the assured in, or control over, the property to cease. The object of the provision is to guard against a diminution of the motive for vigilance on the part of the assured.
2. INSURANCE POLICY—*How Construed.*—Insurance policies are to be strictly construed against the insurer, and liberally in favor of the insured.

Error to a judgment of the Circuit Court of Page county, rendered April 21, 1894, in an action of *assumpsit*, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Eppa Hunton, Jr.*, for the plaintiff in error.

The property covered .by the policy of insurance in litigation in this suit was consumed by fire on the 5th day of November, 1891.    The policy was issued on the 23d day of August, 1891, and contained the following provision, ''or if any change takes place in the title or possession of the property, whether by sale or judicial decree, then the policy shall be void.''

It is admitted no change has taken place in the title to the property, but it is maintained that a change did take place in the possession, and that the policy was therefore void.

In whose possession was this property at the date of the policy ?

On the 18th day of April, 1891, the Valley Land and Improvement Company conveyed the property to five trustees (three of whom were residents and two non-residents) to secure certain debts.    No power was given by the terms of this deed of trust to the trustees to take possession of the property conveyed by it.    They had nothing but the power to sell the property upon default in the payment of the debts.

On the 3d of August, 1891, certain creditors of the company filed their bill asking the court to enjoin a sale of the property, which had been advertised by the trustees, and further praying for the appointment of a receiver to take charge of the property, and that the trusts might be administered under the orders of the court.    The company and the five trustees were parties to the suit.

On the 5th day of August, 1891, the three resident trustees gave notice to the general manager of the company to pay all rents to them.

On the 10th day of August, 1891, the court entered a decree in the creditor's suit, refusing to enjoin the sale, and refusing to appoint a receiver.

The policy of insurance was issued on the 23d of August, 1891.    It therefore appears that at the date the property was

insured it was in the possession of the Valley Land and Improvement Company. The three resident trustees had notified the general manager to pay over all rents to them, but if this could be construed into taking possession of the property it was only by the acquiescence of the company, and its agents.

It cannot be maintained that the court was in possession of this property at this time. The bill in the creditors suit alleges that, "the trustees therein named had failed and refused, and still fail and refuse to take possession of the property named in said deed." The bill prays for the appointment of a receiver. The decree of the 10th of August, 1891, recites this prayer of the bill and refuses "to grant the injunction and to appoint the receiver as prayed for," &c.

It cannot, therefore, be maintained that the court by the decree of August 10, 1891, took possession of the property, because by its express terms it refused to do so. Therefore, at the date of the policy the possession of this property was not in the trustees, nor in the court, but was in the Valley Land and Improvement Company. This company had a general manager and had a tenant in charge of the Luray Inn.

The three resident trustees, had, with the acquiescence of the company, notified the general manager to pay over the rents to them.

In whose possession was this property at the date of the fire? On the 26th day of September, 1891, a second decree was entered, in this creditor's suit, which recites the resignation of the five original trustees, and appoints J. Kemp Bartlett, Jr., substituted trustee in their place, with all of their "powers and duties and responsibilities," and further directs him to "take charge of all the real estate of the defendant company, including the Luray Inn, with full power to make a lease," &c.

In October, 1891, Bartlett executed bond, and took possession of the property under this decree.

It is apparent by its terms that, by the decree of September 26, 1891, Bartlett was not only appointed substituted trustee with all the duties, powers and responsibilities conferred upon the five original trustees by the terms of the deed of trust, but additional powers, not possessed by the original trustees, are, by the terms of this decree, conferred upon the substituted trustee. He is to take charge of all of the real estate of the defendant company, with full power to make a lease of it. These are the exact powers which receivers possess, and make Bartlett in addition to his powers as substituted trustee, a receiver. In Kerr on Receivers, page 2, a receiver is thus defined, "A receiver is an indifferent person between parties, appointed by the court to collect and receive the rents, issues and profit of land, or the produce of personal estate, or other things in question, pending the suit, which it does not seem reasonable to the court that either party should do." Now what is the effect of the appointment of a receiver upon the possession of the property?

When a receiver is appointed by a court to take charge of property, it is in the possession of the court by the receiver as its officer. *Thompson* v. *Phœnix Ins. Co.*, 136 U. S. 136. The effect of the appointment of a receiver on the possession of the property is clearly stated in Kerr on Receivers, pages 157 and 158.

"Parties to the suit removed from possession. In appointing a receiver the court of chancery takes possession of the property over which the receiver is appointed, by the hands of its officer." "Parties removed from possession by the appointment. The effect of the appointment of a receiver is to remove the parties to the suit from the possession of the property."

But the Valley Land and Improvement Company (as well as the three resident trustees) was a party to this suit, and was by this decree removed from the possession of this

property, and the Circuit Court of Page county, through J. Kemp Bartlett, Jr., its receiver, took possession of the same, and continued in possession of it to the date of the fire.

The possession at the date of the policy was in the Valley Land and Improvement Company.

The possession at the date of the fire was in the Circuit Court of Page county, through J. Kemp Bartlett, Jr., its receiver. The policy, by its terms, provides that when such a change of possession takes place the policy is void. This is the contract of the parties, and upon the contract the claim of the plaintiffs must stand or fall. There was a change in *the fact* of the possession.

This was the very condition of affairs to which the provision in the policy by its terms applied, and to which it was intended to apply.

It may be conceded that if the court had appointed the three resident trustees, receivers, it would not have avoided the policy. There would have been in that case no change in the fact of possession. It is possible that if the court had appointed any one of the three original trustees, who probably held as partners (*per mie et per tout*) there would have been no change in the fact of possession.

It may also be conceded that a mere change of trustees would not have avoided the policy, because, by the terms of the deed of trust, the trustee had no right to the possession. It is believed that a change of trustees, under a deed of trust, where the trustees were legally in possession of the property under the provisions of the deed of trust, would violate this clause and invalidate the policy.

The test to be applied in each case is whether *the fact* of possession has been charged.

It is true the same tenant was continued in charge of the property by the receiver. But the clause against the change of possession does not refer to a change of tenants or occu-

pancy, but it refers to *the right* of possession.   1 May on Insurance (3 ed. 1891) sec. 273 A.

For these reasons it is maintained that there was a change in the possession of the property, between the time at which the policy was issued and the date of the fire, which avoided the policy, and for this reason the instructions granted the paintiff in the trial court are erroneous.

*Marshall McCormick* and *Charles M. Brown*, for the defendant in error.

HARRISON, J.: This is an action of assumpsit, brought in the Circuit Court of Page county, by the Valley Land and Improvement Company, for the use of J. Kemp Bartlett, Jr., trustee, against the Georgia Home Insurance Company, to obtain judgment upon a policy of insurance executed by the defendant on the 23d day of August, 1891, upon the property of the Valley Land and Improvement. Company, situated at Luray, in the county of Page.

On the 21st day of April, 1894, the following verdict was rendered, "We, the jury, find for the plaintiff, and assess the damages at $4,308.84, with interest from January 28, 1892, till paid." The question presented for our consideration was raised, upon the trial, by the Circuit Court refusing to give the following instruction, asked for by the defendant.

"The court further instructs the jury that if there is any change in the possession of the property insured, between the date of the policy and the date of the fire, without the consent or knowledge of the company, the jury must find for the defendant, unless the said company has waived the said provision of the said policy."

There were other instructions asked for by the plaintiff and refused by the court, but, in the view taken of this case, it is only necessary to consider the one quoted.

The policy of insurance sued upon contains the following, usual provision: "*Or if any change takes place in the title or possession of the property, whether by sale or judicial decree, without notice to the company and its consent endorsed thereon, then the policy shall be void.*"

It is claimed by the insurance company that after the policy was executed, there was a change of the possession of the property insured, and consequently a forfeiture under the clause just quoted.

The facts disclosed by the record are as follows : On the 18th day of April, 1891, the Valley Land and Improvement Company, duly incorporated, conveyed a very large amount of real and personal property, including the Luray Inn and Caverns, in Page county, to H. J. Smoot and four others, as trustees, to secure a heavy general indebtedness due from said company. On the 1st day of May, 1891, the company leased the Luray Inn, together with the grounds and curtilage, which had been conveyed in the deed of trust, to one Frederick W. Evans.

On the 3d day of August, 1891, certain creditors of the company filed their bill in the Circuit Court of Page county, asking the court to enjoin a sale of the property, which had been advertised by the trustees, and further praying for the appointment of a receiver to take carge of the property, and that the trust might be administered under the orders of the court. On the 10th day of August, 1891, the court entered a decree declining to appoint a receiver, or to enjoin the sale, but directed the trustees to proceed to sell the property on the terms prescribed by the deed of April 18, 1891, and to report any sale made, to the court, and to hold any money received, subject to the order of the court.

On the 23d day of August, 1891, the trustees secured and had placed upon the property of the company, real and personal, fire insurance policies to the amount of about $100,000,

distributed among twenty-seven different companies, for which insurance a premium of $1,892.70 was paid. Among these policies was that of the Georgia Home Insurance Company, defendant in this suit, for $5,000, which was placed upon the Luray Inn.

On the 26th day of September, 1891, H. J. Smoot and others, trustees, made their report to the Circuit Court, settled their accounts, and resigned their positions as trustees. The court entered an order ratifying and confirming all their acts and doings as trustees, and appointed J. Kemp Bartlett, Jr., as substituted trustee in their room and stead (Bartlett was the president of the Valley Land and Improvement Company, whose property was insured), "with all the duties and responsibilities required by law," and with the power, among others, to lease out the Luray Inn and collect the rents. Bartlett was required to give bond and security, and to make report of his acts and doings as trustee to the court. He did not, however, qualify as substituted trustee by giving the required bond, until the 16th day of October, 1891, and on the 5th day of November, 1891, the Luray Inn was destroyed by fire.

It is earnestly contended by counsel for plaintiff in error that the terms of the decree appointing J. Kemp Bartlett, Jr., as substituted trustee, in effect made him a recever of the property, and that the change from H. J. Smoot and others, trustees, to J. Kemp Batlett, Jr., receiver, was such a change in the possession of the property insured as to release the insurer from all liability to pay the loss. In *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287, it is held that a change of receivers is not such a change of possession, or title, as to forfeit the policy. The objection here is that this was a change from a trustee to a receiver. We understand counsel for plaintiff in error to admit that if the court had appointed one of the original trustees receiver, instead of Bartlett, there would have been no change of possession affecting the policy.

This position is unquestionably sound, and it follows, as a consequence, that the court could have appointed H. J. Smoot, one of the original trustees, as receiver, and subsequently to such appointment changed the receiver by removing H. J. Smoot and appointing J. Kemp Bartlett, Jr., in his place, and under the law as laid down by the Supreme Court of the United States in *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287, it would not have worked a forfeiture of the policy, because it would have been only a change of receivers. I can see no propriety in the court adopting the circuitous method suggested for appointing Bartlett receiver. It would have been a vain thing. Nor do I think his appointment as receiver, in the mode adopted by the court, wrought any such change in the possession or title of the property as is contemplated by the clause of the policy under consideration.

"A receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, *but not to change the title, or even the right of possession, in the property.*" *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 236. Under this authority, it may be conceded that the effect of the decree of September 26, 1891, was to make Bartlett a receiver. Still, that did not change the title or right of possession in the property. H. J. Smoot and others, trustees, were, presumably with the consent of the Valley Land and Improvement Company, acting as receivers in fact, though not in law, and the change from them to J. Kemp Bartlett, Jr., as receiver could not, under *Thompson* v. *Phenix Ins. Co.*, have operated to forfeit the policy. I do not think the sound and just rule laid down in the case cited can be limited to a change of receivers. I think the same reason-

ing would apply to a change of trustees, or a change from a trustee in control to a receiver in like control. In fact, no change of this character, merely affecting the control of the rents of the property, is the change contemplated by the policy, and therefore would not forfeit the insurance. This condition in the policy against alienation refers only to such a sale or disposition of the property as causes all interest of the assured in, or control over, the property to cease. *Commercial Union Ass. Co.* v. *Scammon*, 126 Ill. 355. The object of providing against a transfer or change of title or possession is to guard against a diminution in the strength of the motive which the insured may have to be vigilant in the care of his property.

"Any change in, or transfer of, the interest of the insured in the property, of a nature calculated" to make the insured less watchful in guarding and preserving the property from destruction by fire, "is in violation of the policy. But if the real ownership remains the same, if there is no change in the *fact of title*, but only in the evidence of it, and if this latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not violated." *Ayres* v. *Hartford Fire Ins. Co.*, 17 Iowa, 176, 185-6.

Now, let us consider what change had taken place in the possession of the property insured that is complained of by the plaintiff in error.

At the time the assurer executed the policy, the insured property was in the lawful possession of the Valley Land and Improvement Company. It was in the actual possession of Frederick W. Evans, under a lease. The policy was taken out in the name of the Valley Land and Improvement Company, and made payable, in the event of loss, to H. J. Smoot and others, trustees, "as their interest may appear." The trustees, presumably with the consent of the owner, the Val-

ley Land and Improvement Company, were collecting the rents from the property, and disbursing the same in discharge of their duties as trustees.

At the time of the fire, the property was still in the lawful possession of the Valley Land and Improvement Company, and it was still in the actual possession of Frederick W. Evans, as lessee. The only change that had taken place was that the court had appointed J. Kemp Bartlett, Jr., as the hand to receive and sign receipts for rent arising from the Luray Inn, in the room and stead of H. J. Smoot and others, trustees, resigned. The only act performed by J. Kemp Bartlett, Jr., as receiver, after his qualification on the 16th of October, 1891, disclosed by the record, was to make an endorsement thereon, extending for a further time, the same lease that was on the property when the policy was executed; thus continuing the property in the actual possession of the same lessee.

We must look at the substance of things, and not at the shadow. The purpose of the clause under consideration was not to work a forfeiture; it was intended to protect the insurer against wrong or injury. The plaintiff in error has not been injured by J. Kemp Bartlett, Jr., having been appointed to receive and receipt for rents arising from the Luray Inn in the place of H. J. Smoot and others. Whether he performed that duty as receiver or as substituted trustee, in either case, he was doing no more than the trustees were doing when the policy was executed.

Nor has the appointment of J. Kemp Bartlett, Jr., as receiver, produced any such change of interest in the property as to make the assured less watchful in guarding and preserving it from destruction by fire, and consequently there has been no forfeiture of the policy. It is a fact worthy of note that the large insurance on this property, nearly $100,000, represented by twenty-seven different companies, was promptly paid without question under the advice of counsel, except by

one insolvent company and the plaintiff in error here; and it is conceded that all these companies had the same provision in their policies that is relied on to forfeit the policy in this case.

These insurance policies abound with innumerable stipulations, forfeitures, and provisions hard to understand, and difficult of performance, and it is a well-settled rule that they must be strictly construed against the insurer, and liberally in favor of the insured.

For the foregoing reasons, I am of opinion that there is no error in the judgment of the Circuit Court, and it must be affirmed.

The other judges concur in the opinion of HARRISON, J.

AFFIRMED.