Merrell, J.
At the trial an issue of fact was raised as to whether one Grigor, claimed by the *184 plaintiff to have been defendant’s agent in obtaining and placing the insurance in question, was or was not such agent. It is conceded that Grigor knew the nature and extent of plaintiff’s title before and at the time the policy was issued. The facts, so far as uncontroverted, are that Grigor at the time the policy was written was secretary of The Union Loan & Savings Company, which held a mortgage on plaintiff’s property. At that time, and for some period before, Grigor .held a license as agent for defendant company, issued at the latter’s instance by the' state insurance authorities. Agent’s commissions for insurance effected upon property in which The Union Loan & Savings Company had a mortgage interest, the placing of which insurance that company in practice controlled, were nominally paid to Grigor as agent for the defendant company, and by Grigor turned over to the loan company. Grigor seems never to have written up'or countersigned a policy in his company, the actual preparation of policies, including the one in suit, having been done by the insurance agency of The Leonard Parks Company, of the same city.
The ordinary course of such.business was thus described by Grigor:
“The Leonard Parks Company each month would call us up and ask us for the renewals; they kept a schedule of the renewals that we had, and they would call us up and ask us which ones we still had loans on, and those we didn’t have loans on they would see them themselves; the others they asked us if they were still in force, and they would write out the policies and send them to us.”
*185 Grigor did not recall having telephoned himself to The Leonard Parks Company with reference to the policy in suit, and the evidence tends to establish that another employe .of The Union Loan &' Savings Company actually did so. It is not claimed that this other employe, or The Leonard Parks Company, had any actual knowledge of plaintiff’s title. It is therefore contended on behalf of defendant that Grigor had no part in the transaction concerning the insurance in question, and that his personal knowledge as to plaintiff’s title could by no possibility and upon no theory be imputed to defendant company.
The point is well taken if the inference of fact is sound. Although there was no- finding of facts by the trial court, its judgment implies of necessity a finding, first, as a matter of fact, that Grigor was the agent of defendant in placing this insurance, and, second, as a matter of law, that Grigor’s knowledge of plaintiff’s title is to be imputed to defendant.
This court cannot weigh conflicting evidence, and its sole province with respect to the issue of fact is to determine whether there was any evidence in support of the finding.
Such evidence appears clearly upon a glance at the situation viewed in its entirety. The defendant company obtained contracts of insurance upon the properties of the clients of The Union Loan & Savings Company by appointing an officer of the latter company ^its agent, thus securing to such officer or the loan company a sufficient .financial in *186 ducement by way of agent’s commissions. Grigor’s agency was the procuring cause of the insurance issued upon plaintiff’s property. His agency was entitled to the commissions customarily paid therefor, and his agency carried whatever responsibility inheres in the office of agent, either personal to himself or cast by operation of law upon his principal. In this view it matters little whether the agent performed personally the business of the agency or suffered it to be performed by another in his name and under his responsibility. If it mattered at all, the defendant is not in position to urge the point, since the appointment of Grigor as agent was obviously for the sole purpose of controlling the insurance of which the loan company had the disposition. It follows that the undisputed evidence was ample to support the conclusion of fact that Grigor is to be taken as the defendant’s agent in procuring the insurance contract with reference to plaintiff’s property. This conclusion is fortified by the provisions of Section 9586, General Code: “A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party, company or association, thereafter issuing a policy upon such application or a renewal thereof, anything in the application or the policy to the contrary notwithstanding.”
We are thus brought to the fundamental issue in the case, namely, the responsibility of an insurance company under a policy of fire insurance procured by its agent with full knowledge of the actual title of the insured, a leasehold, where the policy itself provides that the same shall be void “if the *187 subject of insurance be a building on ground not owned by the insured in fee simple/’ and that “no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except * * * by * * * agreement endorsed hereon or added hereto.”
The issue thus stated arises upon the undisputed evidence in the case, that the insured until after the loss had occurred did not in fact know that either of the stipulations just quoted were contained in the policy, which did not come into his possession until after the fire.
The court of appeals, whose decision is now under review, felt that the question was determined in favor of the defendant company by a prior decision of this court, The Ohio Farmers’ Insurance Co. v. Titus, 82 Ohio St., 161. In argument, the defense relied chiefly upon that case and Northern Assurance Co. v. Grand View Bldg. Assn., 183 U. S., 308.
It cannot 'be doubted that the doctrine of the case last referred to, a case altogether analogous upon the facts to the instant case, would, if followed, dispose of the present issue, whether or not our own previous holdings have that effect. In either case the question involved is of sufficient importance to justify an examination in the light of principle.
It is settled in this state that the knowledge of the agent with reference to the subject-matter concerning which he acts in pursuance of authority from his principal is the knowledge of the principal. (Massachusetts Life Ins. Co. v. Eshelman *188 et al., Exrs., 30 Ohio St., 647, and First Natl. Bank of New Bremen v. Burns et al., 88 Ohio St., 434.) Applying this doctrine to the facts of the instant case we have apparently the situation of the insurer issuing to the insured a contract which the former knows to be void and worthless from its inception. Pursuing the supposed case further we find the insured, having suffered a loss, endeavoring to recover under a contract concededly void unless the effect of the restrictive provisions of the policy can be avoided by parol evidence of the true situation as between the insured and the insurer, the latter of course represented by its agent.
That parol evidence cannot be received to vary or modify the terms of the written policy is the substantial ground of the decision in Northern Assurance Co. v. Grand View Bldg. Assn., supra. At page 361 Justice Shiras says: “Contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, * * * this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects.” Two further steps in the process of reasoning led the court to a final judgment for the insurance company. They are, first, “The insured is presumed, as matter of law, to be aware of such limitations” — the voidance and non-waiver clauses — and, second, “There is no finding that the agent communicated to the company * * * the fact that there was existing insurance on the property, *189 and that he had undertaken to waive the applicable condition.”
It is impossible to accept this reasoning. It is indeed true that the insured cannot by parol vary a written obligation by which he has undertaken to be bound, or one which he has accepted as the measure of his rights, either knowing its contents or having had a reasonable opportunity to know them. In either case he is held to the terms-of the writing because he has made it his own. This is quite another thing from presuming him to know what in fact he does not know. If in such case he is held to the terms of a writing which he has not read, it is because his neglect to read after opportunity to do so is his deliberate acceptance of the writing, or, rather, his election to be bound thereby, whatever its contents. If, again, in such case, the insured is deprived of his fancied security by the express terms of the written policy, he cannot plead his own neglect to circumvent the consequence of a written contract, which, so far as is known by the other contracting party, is in all respects open and fair.
These observations, however, have no just application to the conceded facts of the Northern Assurance case, nor to the facts of the case at bar. In neither instance does the insurer plead his own negligence to avoid the consequences of his written obligation, rather does he plead that the other party to the writing, the insurer, has taken advantage of his neglect to foist upon him a contract which, in view of facts at the time known to such other, in -one breath creates an obligation *190 and in the next takes it away; in fine, a contract which is no contract. This plea is in effect an appeal to the chancery powers of the court to enjoin the other party, the insurer, from setting up the restrictive clauses of the policy in defense of an action at law by the insured on the policy, and this on the ground that to permit the defense at law would be to work inequity or perhaps fraud on the insured. Where fraud is the basis of appeal, the negligence of the party defrauded is not an answer. By this plea, substantially that of estoppel, there is clearly no attempt to set aside or infringe upon the parol evidence rule.
It remains to consider whether the plea so defined is borne out by proof that the agent of the insurance company who procured the insurance in question knew at the time the policy was issued the fact as to the title of the insured, or as in the Northern Assurance case, the fact of prior insurance. This, in truth, is the turning point in the instant case as it was in the above case, where the majority opinion (the Chief Justice and two associates dissenting) finds that the insurance company had no notice of the defect in the position of the insured, by reason of the knowledge thereof had by its agent. The insured was conclusively “presumed” to know the contents of the policy, but no such presumption was indulged to make the knowledge .of the agent that of his company, as to the nature of the title of the insured.
In the present connection it will suffice to say the latter presumption, or more accurately, rule of law, is well established in the law of this state. It *191 is but a corollary of the doctrine of respondeat superior and is widely recognized.
From this viewpoint and with reference to the facts of the instant case the so-called “ñon-waiver” clause is peculiarly ineffective. That clause is here invoked not so much to limit the power of the agent to contract on behalf of his principal, as in an effort to exonerate the insurance company from the application of the generally recognized principle of law whereby the agent’s knowledge is imputed to his principal. Without considering whether a party to such a contract may stipulate his exemption from a broad rule of the common law, it will suffice to observe that the terms of the “non-waiver” clause are inapt to the purpose. Thus Commissioner Pound, speaking for the court, in German Ins. Co. v. Shader, 68 Neb., 1, says at page 4: “The general rule that an insurance company can not take advantage of conditions in a policy whereby such policy is to be void by reason of circumstances existing at the time the policy issued, in case the facts were known to its agent at the time, has been recognized universally,” and further adds, “Including our own court, the courts of some twenty-seven states, at least, have, upon one ground or another, adhered to this doctrine in the face of these provisions as to waiver.”
In many jurisdictions the conclusion indicated is reached on the theory of estoppel, as in Wood v. The American Fire Ins. Co., 149 N. Y., 382. The same result is necessitated if the word “void” in the policy is construed to mean “voidable” at the option of the company. (Ewart, Waiver Dis *192 tributed, 210.) On this theory, the company, in the present case, having accepted the payment of premiums for twenty-eight years, with knowledge imputed to‘it'of facts as to the title of the insured, entitling it to avoid the obligations of the policy, will be deemed to have elected the position of responsibility thereunder.
In accordance with the views expressed will be found an impressive majority of the courts of last resort in the several states, and also many of the text-writers. 3 Cooley, Briefs On Law of Insurance, 2619 et seq.; 2 Joyce on Law of Insurance (2 ed.), Section 439 et seq.; Elliott on Insurance, Section 188; Bowers’ Law of Waiver, Section 279 et seq., and Annotations 107 American State Reports, 99 to 149. See also Ewart, Waiver Distributed, Chapter X, and the many cases cited in the works referred to.
However, it is strongly insisted by counsel for the insurance company that the issue in the present case has already been decided by this court in favor of the insurer in the case of The Ohio Farmers' Ins. Co. v. Titus, supra. And such was the view of the court of appeals.
In the Titus case the insurer, after a fire loss, brought action on the policy, and was met by an answer pleading that clause of the policy rendering the same void “if the subject of insurance or any part thereof, or the real estate or any part thereof * * * now is, or shall hereafter be incumbered by mortgage or otherwise,” and also a “non-waiver” clause the same as that invoked as in the case at bar. The answer further averred, in the language of the *193 opinion, “that after the issuance of said policy, and before the time of the fire, the real estate on which the barn was situated was incumbered by a mortgage.” The plaintiff replied, admitting the encumbrance, but alleging that he had notified the company of the execution of the mortgage and that the company thereafter accepted premiums. There was apparently evidence that the company’s agents were informed of the subsequent encumbrance, but none to indicate that they had communicated the same to the company. It was therefore held that a verdict should have been directed for the company.
1 There is nothing in the report of the Titus case to indicate that there was any- breach of the stipulations of the policy at its inception, that is, at the time the policy was issued, much less that the company’s agents had knowledge of such breach. When the insured received the policy and paid the first premium he obtained a policy which actually insured the property in question. Moreover, upon delivering the policy and receiving the initial premium, the functions of the company’s agent ceased, so far as their apparent scope was concerned. If further power 'was to be attributed to the agent, it could only be found in some express authorization by the company in the policy or elsewhere. The terms of the policy itself negatived the existence of further powers in the agent. Hence notice by the. insured to the agent of any subsequent encumbrance placed upon the property insured could not be imputed to the company, for the *194 obvious reason that the agent’s knowledge was obtained at a time when he had ceased to have any duty to perform with respect to the property or insurance in question, and no longer possessed power real or apparent with respect thereto.
It must therefore be seen that the Titus case does not control the decision of the case at bar, and is in no sense in conflict with the principles of law herein declared.
The third defense of the insurance company presents matter independent of the issues hitherto discussed. The policy provided that, the same “shall be void if * * * any change * * * take place in the interest, title, or possession of the sub-* ject of insurance * * * whether by legal process * * * , or otherwise.”
For some time prior to the fire plaintiff was in default for rents and taxes under his lease, which reserved to the lessors a right of re-entry in such event. At the time of the fire, an action was pending between the lessors and plaintiff as lessee, wherein the former sought a decree of forfeiture, recovery of rent, and the appointment of a receiver to collect rentals pending the litigation. With the consent of the present plaintiff a receiver had been appointed, and was in technical charge of the property. However, Foster continued to live in the property without paying rent to the receiver; he, Foster, in fact, collected rents from the tenants of the building and turned them over to the receiver. Judgment in the case decreeing forfeiture and awarding to the lessors a writ of pos *195 session was not .rendered until some months after the fire.
We are of the opinion that neither the existence of grounds of forfeiture at the time of the fire, nor the incumbency at that time of a receiver to sequester rentals, constituted a change in the “interest, title, or possession” of the insured, nor a termination of his insurable interest.
The common stipulation in policies of fire insurance, here set up in the third defense, has quite generally been construed as having reference to the increase of hazard which may result from an actual change in title or possession, neither of which had occurred in the present instance. This was the view .expressed in Bronson v. Insurance Co., 64 W. Va., 494, on other points strongly relied on by defendant, where, at page 496, it is said: “It is the actual change of possession * * * that violates the policy.” In Georgia Home Ins. Co. v. Bartlett, Trustee, 91 Va., 305, the appointment of a receiver to take charge of the property and collect rentals was held not to° void the policy under the precise clause here in question. It was there said, at page 309: “The test to be applied in each case is whether the fact of possession has been changed.”
To the same effect are Walradt v. Phoenix Ins. Co., 136 N. Y., 375, and Marcello v. Concordia Fire Ins. Co., 234 Pa. St., 31.
Reason and justice support this doctrine, and the court of appeals and the trial court did not err in finding, in effect, that the third defense was not sustained by the proof.
*196 The judgment herein of the court of appeals is therefore reversed and that of the court of common pleas affirmed.

Judgment of the court of appeals reversed and that of the common pleas affirmed.

Matthias, Johnson and Robinson, JJ., concur.
Wanamaker, J., concurs in the judgment.