# Richmond.

## VIRGINIA F. & M. INSURANCE CO. v. MORGAN.

### NOVEMBER 9th, 1893.

1. INSURANCE—*Warranties.*—A warranty is an agreement in the nature of a condition precedent, and like that must be strictly complied with, whether material or not.    *Ins. Co.* v. *West,* 76 Va. 575.

2. IDEM—*Conditions—Iron Safe Clause.*—In application for policy of fire insurance insured was asked if he would keep his account books in an iron safe, or secure in another building.    He answered in the affirmative.
HELD:
    The statement was a warranty.

3. IDEM—*Parol evidence.*—As parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written contract, an insured who could not read English will not be permitted, in the absence of fraud, to prove that his application was filled up by the agent, that he was not questioned as to his books; that he did not tell him he would keep his books in an iron safe or secure in another building, and that the questions and answers were not read to him.    *Ins. Co.* v. *Yates,* 28 Gratt. 585.

Argued at Wytheville.    Decided at Richmond.

Error to judgment of circuit court of Tazewell county, rendered at the August term, 1892, in an action on a policy of fire insurance, wherein Samuel Morgan was plaintiff and the Virginia Fire and Marine Insurance Company was defendant. The policy was for $1,500 on a stock of goods.    The jury found a verdict for the plaintiff for $1,090 90, and there was judgment accordingly, to which judgment the defendant obtained a writ of error and *supersedeas.*    Opinion states the case.

*Chapman & Gillespie* and *W. W. & Bev. T. Crump*, for plaintiff in error.

*Henry & Graham*, for defendant in error.

LEWIS, P., delivered the opinion of the court.

This was an action on a policy of fire insurance issued by the defendant company on the plaintiff's stock of goods in his storehouse at Cedar Bluff, in Tazewell county. The policy recites that it is based upon the written application, signed by the assured, and that "the said application shall be treated as a part of, and be incorporated in, the policy, and that the statements thereof shall be treated as warranties by the assured that the facts therein stated are true."

In the application the assured was asked the following, among other questions, viz.: "State what books of account you keep; will you keep them in an iron safe or secure in another building?" To which the answer was: "Day-book and ledger; yes."

The goods having been destroyed by fire, the company refused payment, on the ground that the assured had not kept his books in an iron safe or secure in another building, but had kept them in a wooden desk in the storehouse, where they were destroyed in the fire. This defence was also set up in bar of the action under the plea of *non assumpsit;* and at the trial the court was asked in effect to instruct the jury that the answer in the application in regard to the place of keeping the books amounted to a continuing warranty, which, if broken, avoided the policy. But the court refused to so charge, and, on motion of the plaintiff, told the jury in effect that before they could consider the agreement in regard to the books they must believe it was material, and further, that the company was injured by its non-observance.

This ruling was, seemingly, based on the idea that the agree-

ment was not a warranty, but a representation, which is a mistaken view.   The stipulation is undoubtedly a warranty, made so by the express contract of the parties, and the jury ought to have been instructed that a literal compliance with it was essential to a recovery by the plaintiff.

" An express warranty," says May, " is a stipulation inserted in writing on the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends. By a warranty the insured stipulates for the absolute truth of the statement made, and the strict compliance with some promised line of conduct, upon penalty of forfeiture of his right to recover in case of loss should the statement prove untrue, or the course of conduct promised be unfulfilled.   A warranty is an agreement in the nature of a condition precedent, and, like that, must be strictly complied with."   May, Ins., sec. 156.

This is the language of the decided cases, and of this court in *Lynchburg Fire Ins. Co.* v. *West*, 76 Va., 575.

And the author correctly adds, that whether the fact stated or the act stipulated for be material to the risk or not, is of no consequence, the contract being that the matter is as represented or shall be as promised; and unless it prove so, whether from fraud, mistake, negligence, or other cause, not proceeding from the insurer, or the intervention of the law or the act of God, the insured can have no claim.   " One of the very objects of the warranty," he continues, " is to preclude all controversy about the materiality or immateriality of the statement.   The only question is, has the warranty been kept? There is no room for construction, no latitude, no equity.   If the warranty be a statement of facts, it must be literally true; if a stipulation that a certain act shall or shall not be done, it must be literally performed."

Whether a statement is a warranty or not depends upon the intention of the parties, as does the nature and effect of the warranty, when there is one, which is to be gathered from the language used and the subject matter to which it relates.   Par-

ties have a right to make their own contracts, and when the meaning of the contract is ascertained, effect must be given to it. It is not for the court to add to or detract from it, but the contract must be enforced without regard to any hardship, real or supposed, to either party, or whether it is wise or unwise, provident or improvident.

Thus, in *Jeffries* v. *Life Ins. Co.*, 22 Wall., 47, where the insured was asked in the application whether he was married or single, and falsely answered that he was single, it was held that the falsity of the answer defeated a recovery, as one of the express conditions of the policy was that the statements in the application were in all respects true; and in the course of the opinion it was said: "There is no place for the argument either that the false statement was not material to the risk, or that it was a positive advantage to the company to be deceived by it. It is the distinct agreement of the parties that the company shall not be deceived to its injury or to its benefit. The right of an individual or a corporation to make an unwise bargain is as complete as that to make a wise one." See, also, *Imperial Fire Ins. Co.* v. *Coos County*, 151 U. S., 452.

According to the authorities, warranties are of two kinds, viz.: (1) Affirmative, or warranties *in presenti*, as they are sometimes called, which affirm the existence of certain facts pertaining to the risk at the time of the insurance; and (2) Continuing or promissory. An instance of the first class is *Va. Fire & Marine Ins. Co.* v. *Buck & Newson*, 88 Va., 517. There the insured, in answer to a question in the application, stated that a watchman slept on the premises at night. On the night of the fire the watchman was absent, but it was held that the policy was not thereby avoided, because the answer related to the present, and not to the future—in other words, that the statement was manifestly intended merely as affirmative of the usual and existing state of things, and had nothing promissory as to the future. But, as was said in the same case, a promissory warranty—*i. e.*, one which requires something to be done

or omitted after the insurance takes effect, and during its continuance—avoids the contract, if not complied with according to its terms.

The present case falls within the latter category, certainly as regards the promise to keep the books in an iron safe or secure in another building. It is quite probable, in the nature of the case, that this stipulation was regarded as material; but whether it was or not—for with that we have nothing to do—the contract is express that the books would be thus safely kept; and if, as is admitted, the promise has not been fulfilled, there can be no recovery.

A warranty may be in part affirmative, and in part promissory. Thus, in an Iowa case the building was described as "occupied for stores below, the upper portion to remain unoccupied during the continuance of this policy." In an action on the policy it was held that so much of the statement as related to the lower portion of the building was an affirmative warranty merely, but that what related to the upper portion was a promissory warranty, which was broken, if, at any time during the life of the policy, that portion of the building was so occupied. *Stout* v. *City Fire Ins. Co.*, 12 Iowa, 371; 79 Am. Dec., 539.

The main ground upon which the plaintiff relies, in support of the judgment, is a provision in the policy that the same "shall be void if the assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof;" and further that "this policy is made and accepted subject to the foregoing stipulations and conditions."

This language, it is contended, is inconsistent with the idea of a warranty, and shows that the answers in the application were intended as representations, none of which would avoid the policy, unless false and material to the risk.

The answer to this is that just as a policy may contain both affirmative and promissory warranties, so it may contain both

warranties and representations; and the present is a case of that sort. In the application, wherein the applicant affirms and warrants his answers to be true, and agrees that the same shall constitute the basis of the insurance, he was asked as to the dimensions of the storehouse, when it was built, &c. Now, as to the answers to these questions and the like, it would be absurd to say that they are anything more than representations, because they are merely descriptive, and were evidently so intended by the parties. Wood, Fire Ins., sec. 138. On the other hand, looking, as we must, to the whole contract, it is equally clear that the answer in regard to safely keeping the books was intended as a warranty. It is not descriptive of anything, and related, not to matters depending upon opinion or judgment, as in *Lynchburg Fire Ins. Co.* v. *West,* 76 Va., 575, and *National Bank* v. *Ins. Co.,* 95 U. S., 673, in which cases the assured was asked as to the value of the property, but it constituted an undertaking to do a certain thing in the future, and is, therefore, not within the operation of the provision in the policy just quoted. To call such a stipulation a representation, or anything less than a warranty, is a misuse of terms.

This being so, the only remaining question necessary to be considered arises on a bill of exceptions taken by the plaintiff, defendant in error here. At the trial the plaintiff offered, but was not allowed, to testify that the application, which he admits he signed, was filled up by the agents of the company; that he was not questioned as to his books, and did not tell the agent he would keep them in an iron safe or secure in another building; that, being a foreigner, he could not read the English language; and that the questions and answers were not read to him.

We are of opinion that in this particular the circuit court ruled rightly. There is no pretense of fraud, and to have admitted the evidence would have been an infringement of the rule which excludes parol contemporaneous evidence to con-

tradict or vary the terms of a valid written contract. This, according to *South. Mut. Ins. Co. v. Bates*, 28 Gratt., 585, is so clear that we need only refer to that case. There the insured, in answer to a question, stated that the premises were unincumbered, whereas they were in fact subject to a deed of trust. He was allowed, however, to testify at the trial that he had never read the application, and was not interrogated by the agent of the company as to incumbrances. But on appeal, this court, in an able opinion by Judge Staples, in which the authorities were reviewed, held the evidence inadmissible. The plaintiff, it was said, was bound not only to answer the questions put to him correctly, but to use due diligence to see that the answers were correctly written, and that if he signed the application without reading it, or having it read to him, that of itself was inexcusable negligence. It was also said that if the evidence were admissible, it would be difficult to imagine a case in which the legal import of a deed might not be varied by parol testimony.

The only difference between that case and this is, that here the plaintiff offered to prove his inability to read the language in which the application was filled up. But that is immaterial, for he could have easily ascertained the contents of the paper, and the law presumes, under the circumstances of the present case, that when he signed the paper he understood and assented to all it contained. If the rule were otherwise, there would be no certainty or safety in written contracts.

For the errors, however, in regard to the instructions the judgment must be reversed, and the case remanded for a new trial in conformity with this opinion.

JUDGMENT REVERSED.