## Staunton.

PRUDENTIAL FIRE INSURANCE COMPANY V. ALLEY.

September 14, 1905.

1. FIRE INSURANCE.—*Iron Safe Clause—Books of Account—Inventory—Warranty.*—The "iron safe clause" in a fire insurance policy by which the assured covenants and warrants that he will take an annual inventory and keep certain books of account; and upon failure to produce such books and inventories for the inspection of the insurer the policy shall be void, is a warranty, and a compliance therewith is essential to the validity of the policy.

2. FIRE INSURANCE—*Warranties—Code, § 3344a.*—The provisions of Code (1904), Sec. 3344a, relating to answers to interrogatories made by an applicant for a policy of insurance, have no application to the warranties contained in the "iron safe clause" of fire insurance policies.

3. FIRE INSURANCE POLICY—*Doubtful Language—Constructions.*—If the language of a warranty in an insurance policy is susceptible of two constructions, the words used are to be construed most strongly against the insurance company, as they are the language of the company, prepared by its agents, officers or attorneys.

4. FIRE INSURANCE—*Books of Account—What Sufficient.*—The stipulation in a fire insurance policy that the assured will keep a "set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments both for cash and on credit," is satisfied if the books are kept in such a manner as that, with the assistance of those who kept them or understood them, the amount of the purchases and sales can be ascertained, and cash transactions distinguished from credit. The books need not be such as an expert accountant in a large business would keep, nor need they give an itemized statement of all goods purchased since the last inventory, nor of the goods sold. If they show the amount of each bill of goods purchased, when and from whom, and the amount of each day's sales, and it appears that no goods were sold on credit, it is sufficient.

Statement.

5. Fire Insurance—*Inventory.*—The "iron safe clause" of a fire insurance policy, requiring an inventory of goods to be taken within twelve months, is sufficiently complied with where it is made to appear that an inventory had been taken within the prescribed period, and that the articles not covered by the policy were accounted for as if sold for cash.

6. Fire Insurance—*Increase of Risk—Expert Evidence.*—It is not error to reject expert evidence offered to show that the erection of a building near the property destroyed was an increase of risk. This is a question for the jury upon all the facts and circumstances in proof, and is not a question for the determination of which expert knowledge is either necessary or proper.

7. Fire Insurance—*Value of Goods Destroyed—Opinion Evidence.*—It is not error to permit witnesses to testify as to the value of the goods destroyed, based upon what they saw in the store-house, where one of the defenses to the action on a policy to recover their value is fraud in the procurement of the policy, and fraud and false swearing after the fire.

8. Fire Insurance—*Declaration of Employee of Agent—Case at Bar.*—Upon the evidence in this case, it is held that the person through whom the policy in suit was issued was an employee of an agent of the defendant, and that his declarations at the time the policy was issued are receivable in evidence against the company.

9. Fire Insurance—*Building and "Addition"—Subsequent Erections—Parol Evidence.*—Where an insurance policy covers a building and "addition," parol evidence may be received to show that at the time the policy was issued there was no "addition" to the house, but that it was agreed that an "addition" should be made at once, and that the building without the "addition" was not worth the valuation put upon it by the company's agent. This does not contradict, nor add to the contract of the parties, but merely shows that the word "addition" in the policy referred to one to be built instead of to one already in existence.

10. Fire Insurance.—*Proof of Loss—Sufficiency.*—Where the loss under an insurance policy on a stock of goods is total, if the proof of loss is in substantial compliance with the conditions of the policy it will be deemed sufficient, although it fails to give the cash value of each item insured and the amount of loss thereon as required by the policy.

Error to a judgment of the Circuit Court of Wise county, in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

---

Statement.

---

This was an action of assumpsit on a fire insurance policy to recover for a total loss of a store-house and stock of goods destroyed by fire. After all the evidence was in, the defendant demurred to the evidence, and the plaintiff joined in the demurrer, and the court rendered a judgment thereon for the plaintiff.

The facts sufficiently appear in the opinion of the court except as to the proof of loss. The proof of loss was made in the form given below, and along with it, and as a part thereof the plaintiff tendered his own affidavit, and the affidavits of sundry persons who had recently seen the store-house and stock of goods, and who, basing their opinions upon knowledge thus acquired, estimated the value of the store-house at about $1,000, and the stock of goods at different sums, varying from $4,000 to $8,000. The trial court admitted in evidence this proof of loss and the affidavit of the plaintiff, but refused to allow the other affidavits to be read in evidence. The plaintiff also offered in evidence the books referred to in his affidavit, kept in connection with his business, and they were received over the objection of the defendant. The proof of loss so admitted and the affidavit of the plaintiff are as follows:

"Proof of Loss Submitted by J. J. Alley, Pltf.

"To J. F. Hurt,

  "Agent for the Prudential Fire Insurance Co.

"Proof of loss sustained by J. J. Alley on one story frame and metal roof store building and additions, &c., situated on the east side of Main street, in the town of Appalachia, Wise county, Virginia, and on stock of general merchandise contained in the above-described building by reason of the fire of Jan. 1, 1904.

"Policy No. 24,415.

"J. J. Alley,
  "Insured.

"Virginia,

"Wise county, to-wit:

"This day J. J. Alley, personally appeared before me, the undersigned, justice of the peace, in and for the State and county aforesaid, and made oath in due form of law, that he was the sole owner of the store house and stock of goods at Appalachia, Wise county, Virginia, that he had said store house and stock of goods insured in the Phœnix Insurance Company, of Brooklyn, New York, and in the Prudential Fire Insurance Company, of Tazewell, Virginia, as shown by policies No. 33,867 in the Phœnix and No. 24,415 in the Prudential, that said store house and stock of goods were destroyed by fire on the morning of January 1, 1904, that he sustained a total loss of the property insured, that his loss is as follows:

"On the store house................$1,000.00
"On the stock of goods................ 6,655.75

"Total loss................$7,655.75

as shown by the depositions and itemized statements, sworn to and filed herewith as part hereof; that said property was unincumbered at the time of the fire; that there had been no change in the ownership of said property since the aforesaid policies were issued; that the origin of said fire is unknown to affiant; that there has been no change in the title, use, occupation, location, possession or exposures of said property since the issuing of said policies; that said store house was used by affiant for store purposes at the time of the fire; that affiant had no other insurance on said property than those hereinbefore mentioned and that he files herewith as part hereof, the depositions of W. V. Thompson, T. B. Thompson, Wm. C. Taylor and others as part hereof.

"J. J. ALLEY.

"Sworn to and subscribed before me February 5, 1904.

"R. J. SHEPARD,

"Justice of the Peace."

"DEPOSITION OF J. J. ALLEY.

"J. J. Alley, a witness of lawful age, being first duly sworn deposes as follows:

Q. 1. State your age, residence, and occupation?

A. 46 years old, Gate City, Va., my family lives in Bristol, Tenn., but my office and principal business is at Gate City, Va., timber and lumber dealer.

2. Were you the owner of a store house and stock of goods in the town of Appalachia, Wise county, Va.?

A. Yes, sir; I was.

3. Did you have any insurance on them? If so, state what companies, give the amount of insurance and the number of the policies?

A. I did; one was in the Prudential Fire Insurance Co., of Tazewell, Va., and numbered 24,415 for $2,625.00, and also an insurance in the Phœnix Insurance Co., of Brooklyn, No. 33,867, for $2,625.00.

4. Were your store house and stock of goods destroyed by fire, if so, state as nearly as you can the date of the fire?

A. They were, and on January 1, 1904, as I understand it.

5. Were you the sole owner of the store house and stock of goods?

A. I was.

6. Did you own in fee simple, and do you now own the land on which the store house was situated?

A. I did and do still.

7. Do you know anything of the origin of the fire?

A. I do not.

8. Was there anything saved from the fire?

A. Not that I know of.

9. Was it a total loss?

A. It was.

10. When did you take an inventory of your stock of goods?

A. About June 10, 1903.

11. What was the amount of your inventory at that time?
A. $3,186.37.

12. Please give an itemized statement of your loss on the stock of goods by reason of the fire, as shown by your books, bills, &c.?

A. Amount of stock as per invoice of

| | | |
|---|---:|---:|
| June 10, 1903.................... | $3,186 | 37 |
| Amount purchases since.................. | 5,102 | 43 |
| Amt. freight paid on purchases............ | 89 | 43 |
| 25% profit on sales.................... | 390 | 61 |
| | $8,768 | 84 |

Less:

| | | |
|---|---:|---:|
| Total sales............................. | $1,953 | 05 |
| Goods short............................ | 6 | 00 |
| Goods returned......................... | 6 | 60 |
| Goods returned......................... | 125 | 55 |
| Goods in depot......................... | 17 | 89 |
| Error in invoice....................... | . 4 | 00 |
| | $2,113 | 09 |

| | | |
|---|---:|---:|
| Loss in stock....................$6,655 75 . |

13. Is the above statement a correct statement taken from your books?
A. It is.

14. What was your loss on the store-house?
Ans. My opinion, without an itemized calculation, is about $1,000.00.

15. Have you the books from which the above statement was made?
A. I have the books and invoices.

16. Where was your store-house situated?
A. On the east side of Main street, in the town of Appalachia, Wise county, Virginia.

17. You have heretofore stated that you had the same property insured in the Prudential Fire Insurance Company; give the stipulation in said policy?

A. $750.00 on one story, frame and metal roof store building, and additions, to include foundations and all permanent fixtures and attachments and counters and shelving as a part of the building, situated on the east side of Main street, in the town of Appalachia, Wise county, Virginia; $4,500.00 on stock of general merchandise, of every description contained in the above described building. This policy covers *pro rata* for one-half of the above named items, amounting in the aggregate to $2,625.00.

Q. Who had charge of your store at Appalachia?

A. T. J. Templeton.

19. Where were you at the time of the fire?

A. I was at Gate City.

20. When were you last in your store at Appalachia?

A. It was a few days before Christmas, 1903.

21. Was the property destroyed by fire—that is, the store-house and the stock of goods, in any way encumbered?

A. They were not.

22. Have you kept a set of books which clearly and plainly show or present a complete record of the business transacted including all purchases, sales, and shipments, both for cash and credit from the date of your inventory, June 10, 1903?

A. I have.

23. Had you any other insurance on said property—the store-house and stock of goods at Appalachia, Wise, Virginia, than those hereinbefore mentioned?

A. I had not.

And further this deponent saith not.

J. J. ALLEY."

*Henry & Graham* and *Geo. W. St. Clair,* for the plaintiff in error.

*Irvine & Slemp* and *W. S. Cox,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was instituted to recover the amount alleged to be due upon a fire insurance policy issued by the Prudential Fire Insurance Company covering such losses as might be sustained by the insured, J. J. Alley, in consequence of the destruction by fire of his store-house and a stock of goods in the town of Appalachia.

Immediately prior to the time the policy sued on was issued, the insured was doing business as a merchant in Gate City, in Scott county, but was about to remove his stock of goods into a store-house in Appalachia, in Wise county. Before moving the stock of goods from Gate City to Appalachia, the insured took an inventory of his stock, completing the inventory on the 10th of June, 1903. He then shipped the goods to Appalachia, except a few articles, and commenced business there on June 18. On the 25th day of that month the policy sued on was issued. On the 29th of the same month a permit was issued, authorizing the insured to make an addition to the building insured. Business was conducted there until the morning of January 1, 1904, when the store-house and its contents were destroyed by fire.

The policy contained what is known as the "iron safe clause," which is as follows:

"WARRANTY TO KEEP BOOKS AND INVENTORIES, AND TO PRO-
DUCE THEM IN CASE OF LOSS.

*"Iron Safe Clause.*

"The following convent and warranty is hereby made a part of this policy:

"1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless

such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2d. The assured will keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchasers, sales, and shipments, both for cash and credit, from date of inventory as provided for in the first section of this clause, and during the continuance of this policy.

"3d. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or failing in this, the assured will keep such books and inventories in some place not exposed to fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

One of the defenses relied on by the insurance company was that the terms and conditions contained in that clause had not been kept and performed by the insured. To sustain his contention that he had complied with the iron safe clause, the insured introduced in evidence over the insurance company's objection the inventory taken at Gate City, referred to above, two books, one to show the purchases and the other the sales made by the insured while doing business at Appalachia, and certain witnesses to explain the manner of keeping the books. The objection made to the inventory introduced was that it was taken before the goods went into the building at Appalachia; that no complete inventory of the stock of goods insured was ever taken; and that the inventory introduced in evidence

includes many articles not covered by the policy. The book of purchases was objected to because it does not give the items or articles claimed to have been purchased, nor show that they were such articles as were covered by the policy. The objection made to the book of sales was that it furnishes no data from which the insurance company could tell what had been sold, at what profit, or for what price, but merely purports to give the cash taken in each day. It is further objected that the books introduced do not "clearly and plainly present a complete record of the business transacted, including all purchases, sales, and shipments for cash and credit from the date of the inventory," as provided by the policy. The insurance company insists that the iron safe clause was a warranty, and that, being a warranty, a literal compliance with its terms was a condition precedent to the right of the insured to recover.

In the case of the *Virginia F. & M. Ins. Co.* v. *Morgan,* 90 Va. 290, 18 S. E. 191, where, in the application for a policy of fire insurance, the insured was asked if he would keep his account books in an iron safe or secure in another building and he answered in the affirmative, the statement was held to be a warranty.

If the undertaking in that case by the insured that he would keep the books required to be kept in an iron safe or secure in another building was a warranty, the agreement to take the inventory and keep the books required is also a warranty, because the covenant is the same as to all. The decision in the Morgan case seems to be in accord with the weight of authority. *Scottish Union, &c., C.* v. *Stutts* (Ga.), 27 S. E. 180; *Western Assur. Co.* v. *Altheimer* (Ark.), 25 S. W. 1067, 1069; *Note to Conn. Fire Ins. Co.* v. *Leary,* 51 L. R. A. pp. 699, 715, and cases cited.

But it is insisted by the insured that the doctrine announced in that case has been changed by the Act of the General Assembly, found in sec. 3344a of the Va. Code of 1904, which provides that "no answer to any interrogatories made by an applicant

for a policy of insurance shall bar the right to recover upon any policy issued upon such application, by reason of any warranty in said application or policy contained, unless it be clearly proved that such answer was wilfully false, or fraudulently made, or that it was material."

This statute by its terms only applies to a policy of insurance issued upon an application in which the insured has answered interrogatories (as he did not in this case) about matters as to which such answer was wilfully false or fraudulently made, and not to conditions of the kind contained in the clause now under consideration. This clause binds the insured to do certain things for the protection of the insurance company, and is important as furnishing a check against fraud on the part of the insured, and a mode by which the insurance company may ascertain the extent of the loss. A compliance by the insured with this clause is a condition upon which, by the express terms of the contract, the validity of the policy is made to depend.

But while the iron safe clause is a warranty, yet if it is so framed as to leave room for two constructions, the words used should be construed most strongly against the insurance company, upon the ground that the company's attorneys' officers, or agents, prepared the policy, and it is the company's language which is to be interpreted. *Liverpool & London, &c., Co.* v. *Kearney,* 180 U. S. 132, 21 Sup. Ct. 326, 45 L. Ed. 460, and cases cited; *Georgia Home, &c., Co.* v. *Bartlett, Tr.,* 91 Va. 305, 21 S. E. 476, 50 Am. St. Rep. 832; 1 Joyce on Insurance, sec. 222.

The clause under consideration is now generally introduced into policies of insurance of merchandise kept for sale against loss by fire, and has frequently been considered by the courts, and most usually has not been subjected to any narrow or close construction. Legal effect has been given it for the purpose of guarding the insurer against fraud or imposition on the part of the insured, but it has received a fair and reasonable

interpretation so that it might not work forfeitures or defeat the claim of the innocent to the indemnity promised by the policy. If the books are kept in such a manner that, with the assistance of those who kept them or understood the system, the amount of purchases and sales can be ascertained, and cash transactions distinguished from credit, it will be sufficient. *Insurance Co.* v. *Ellington* (Ga.), 21 S. E. 1006; *Western Ass., &c., Co.* v. *McGlathery* (Ala.), 22 So. Rep. 104, 108, 67 Am. St. Rep. 26.

In discussing the proper rule for interpreting the iron sale clause, the Supreme Court of the United States, in the case of *L. & L. Ins. Co.* v. *Kearney, supra,* said: "Turning now to the words of the policies in suit, what is the better and more reasonable interpretation of those provisions so far as they relate to the issues in this case? The covenant and agreement 'to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business' should not be interpreted to mean such books as would be kept by an expert bookkeeper or accountant in a large business house in a great city. That provision is satisfied if the books kept were such as would fairly show to a man of ordinary intelligence 'all purchases and sales both for cash and credit.' "

In the case of *Western Assurance Co., &c.,* v. *McGlathery, supra,* where the iron safe clause was substantially, if not identically, the same as in this case, the Supreme Court of Alabama, in discussing the degree of clearness and plainness which must be observed in the entries on the books, said: "Is it that degree which will be satisfactory to an expert or scientific bookkeeper? If so, what system of bookkeeping must be observed? There are rival system of bookkeeping, and the adepts in the one may regard the other as wanting in plainness and clearness. Or is it the degree which will satisfy the mind of the inquirer after the true state and condition of the business, not seeking to work or to avoid a forfeiture of the indemnity of the policy?

How many books and of what description will constitute a set? Can·it be said or supposed that the mind of the insurer and the insured met, and would have given a common answer to those inquiries? Their minds did come together on the essence and substance of this clause, when its words are looked through— that it was the· duty of the insured to preserve in intelligible form, in one or more books of his own choice, written evidence of his ·purchases, of his sales, and of his shipments."

The books in the case under consideration were not kept as books would be kept by an expert book-keeper or accountant in a large business house in a great city, but such book-keeping was not to be expected of a store-keeper in a little mining town, and if the insurer expected it, it ought to have said so in plain language.

The articles embraced in the inventory taken at Gate City which were not shipped to Appalachia are shown to have been accounted for as if sold for cash. While the book of purchases does not give an itemized statement of all goods purchased after the inventory was taken, it does show the amount of each bill of goods purchased, when, and from whom. Neither does the book of sales give an itemized statement of the goods sold, but it does give with a few exceptions which are satisfactorily explained, the amount of each day's sales. It clearly appears that no goods were sold or authorized to be sold by the insured upon credit, and that such goods as were sold without·being paid for by the purchaser were treated as cash sales on the book of sales, and accounted for as cash by the clerk who sold them. The claim that certain shipments were made which the books do not show is not clearly established.

We are of opinion that the provisions of the iron safe clause in this case, under all the facts and circumstances of the case, were substantially complied with by the insured.

The refusal of the court to permit the introduction of expert evidence to show that the erection of a building near the storehouse of the insured was an increase of risk is assigned as error.

Whether or not the erection of the building was an additional risk was for the jury to say, upon all the facts and circumstances in proof, and was not a question to determine which expert knowledge was either necessary or proper.    4 Joyce on Ins., sec. 3818; *Va. Iron, &c. Co.* v. *Tomlinson, ante,* p. 249, 51 S. E. 362, 11 Va. L. Reg. 374, 377.

The action of the court in permitting witnesses to testify as to the value of the goods destroyed, based upon what they saw in the store-house, is assigned as error.

One of the defenses relied on by the insurer was that the insured was guilty of fraudulent conduct in procuring the policy of insurance, and guilty of fraud and false swearing after the fire.    Upon these charges the evidence objected to was clearly relevant, if upon no other ground.

The action of the court in permitting certain declarations of Bond, through whom the policy sued on was issued, is assigned as error.

The objection made to that evidence is that it not only was not proved that he was the agent of the insurer, but, on the contrary, it appears that he was an insurance solicitor or broker.    The evidence shows that the Hurt Insurance Agency, of Tazewell, was an agent of the defendant company and authorized to issue its policies, and that it did issue the policy sued on; that Bond was furnished with blank applications by that agency and solicited insurance for it; that he went to the insured, representing that he was working for the agency, and induced the insured to take out the policy sued on, which was afterwards issued by the Hurt Insurance Agency; that Bond was authorized to deliver policies and collect premiums issued upon applications made by him and accepted by the Hurt Insurance Agency, and to retain his commissions out of the premiums; that he did deliver the policy in question and most probably collected the premium, and, a few days after the policy was issued, procured the building permit which he said the insurance company would issue when he induced the insured to take out the policy.    The

president of the Hurt Insurance Agency, who was also a director in the defendant company, admitted that Bond solicited insurance for his agency, but denied that he did so exclusively, and denied, or at least expressed the opinion that Bond was not in the employment of his agency. It does not appear that Bond procured fire insurance for other agencies or companies, though there is evidence that he attempted to do so.

It is clear from the evidence that the insured did not regard Bond as his agent, or as acting for him in procuring the policy in question.

Under all of the facts of the case, we do not think that Bond can be regarded as a mere insurance broker, but should be considered an employee of the Hurt Insurance Agency, an agent of the defendant company authorized to issue its policies, and that the evidence in question was therefore admissible, under our decisions. *Goode* v. *Georgia Home Ins. Co.,* 92 Va. 392, 23 S. E. 744, 30 L. R. A. 842, 53 Am. St. Rep. 817; *Mutual Fire Ins., &c.,* v. *Ward,* 95 Va. 231, 236 *et seq.,* 28 S. E. 209.

The court permitted evidence to go to the jury as to the value of the building described in the policy after an addition had been put to it, instead of confining the evidence to the value of the building as it was when the policy was issued. This is assigned as error.

At the time the policy was issued the insured testified that he told Bond, the solicitor or agent, that he wished to extend the building back about thirty feet and increase his stock of goods; that Bond fixed the value on the house including the addition which was to be put to it at $1,000 and said he would give him $750 insurance on the building, and have issued a building permit, which was done four days afterwards. The building insured is described in a typewritten paper attached to the policy as a "one story frame and metal roof store building, and addition." That the word "addition" was intended to cover the addition to be built, and not an existing addition, is clear from the fact that at that time there was no addition to the building,

and from the further fact that the building as it then existed was not worth $1,000. The parol evidence does not contradict or add to the contract between the parties. It merely shows that the word "addition" in the policy clearly had reference, under all the facts and circumstances of the case, to an addition to be built instead of to one already in existence, and was therefore admissible in order to enable the court to properly interpret the policy. Brown on Parol Ev., sec. 53; Elliott on Ev., sec. 597; Joyce on Ins., secs. 185, 3808. The court did not err in admitting that evidence nor in giving instructions to the jury based upon it.

The court admitted as evidence the paper filed as proof of loss, and this is assigned as error.

The objection made to that paper is that the insured failed to give the cash value of each item insured, and the amount of loss thereon covered by the policy, as required by the same.

The destruction by the fire was total, and we are of opinion that the proof of loss was a substantial compliance with the conditions of the policy, which is sufficient under our decisions. *Home Ins. Co.* v. *Cohen,* 20 Gratt. 312; *Georgia Home Ins. Co.* v. *Goode,* 95 Va. 751, 755, 30 S. E. 366.

Upon the whole case we are of opinion that there is no error in the record to the prejudice of the insurer, and that the judgment complained of should be affirmed.

*Affirmed.*