# COMMERCIAL CASUALTY INSURANCE COMPANY
## *v.* WILLIAM L. SCHMIDT.
[No. 8, January Term, 1934.]

564

*Decided April 4th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Charles Jackson* and *David Ash,* with whom was *Mark Jackson* on the brief, for the appellant.

*Clater W. Smith,* with whom was *Walter L. Clark* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

A suit on an accident and health disability policy issued in 1930 is defended by the insurance company in this case on the ground of false statements contained in a form of application upon which the policy was issued, and which was embodied at length as part of the policy. The plaintiff has replied that the agent of the company filled in the statements without knowledge or fraudulent participation on the part of the plaintiff, and that the company with knowledge of the misrepresentations possessed by their agent had issued the policy and accepted payment of premiums. The trial court overruled demurrers to the plaintiff's replies, and, denying prayers for direction of a verdict for the defendant, submitted the case to a jury. Verdict and judgment for the

plaintiff resulted, and the defendant appeals. Forty-three exceptions, most of them devoid of importance, were taken to rulings on evidence, and a forty-fourth was taken to rulings on prayers for instructions.

Facts undisputed are that Schmidt, the plaintiff, born in 1896, served in the army from August, 1918, to January, 1919, then as a blacksmith's helper at Sparrow's Point, then, in 1920, 1922, or 1923, as a brakeman in the employ of the Baltimore & Ohio Railroad Company. While in the railroad service, he sustained an injury to his right shoulder, and to his ribs, two of which were fractured. At that time he complained of pains in the head, from which he suffered before the injury in the railroad service as well as after, but only at intervals, as others suffer, and not, he says, as he has suffered since he was hurt, presumably in an accident which is the ground of the present suit. Since he was hurt, his headaches have been constant. He was confined to a hospital one month after the railroad injury, but does not remember that he claimed that permanent disability had been caused him. After his railroad service, he was employed by the United Railways Company of Baltimore, and subsequent to that did odd jobs. After he came out of the army service, he testified, he "was prevented from getting regular employment from 1922 and 1923, by everything combined from day to day. * * * I was just feeling worse and worse. As long as I could make my honest living I did so, and when I needed help, then I first went to the Government." These symptoms that affected him were in the chest, and he started to feel them getting worse in 1928. A physician called as a witness for the plaintiff, and who had attended him six times altogether, in 1926 and subsequent years before the taking out of this policy, testified that in 1926 the plaintiff complained of headache, some cough, and ear discharge, and had bronchitis, soreness of neck muscles and headache, and that the diagnosis was cold and bronchitis. At the time of applying for the insurance in controversy, the plaintiff was working as a grocer's clerk.

On October 30th, 1929, he applied to the United States Government for service disability compensation, certifying that since November, 1918, the date of entry into the army, he had been suffering a disability from chest trouble resulting from exposure at Camp Meade, that he had been given first aid treatment there, and later, after his discharge from the army, had been treated by Dr. Grempler of Baltimore, now dead, and confined in Franklin Square Hospital in 1923, and off and on since 1919 confined to his home one, two, or three weeks at a time. One of the friends, whose confirmatory certificate was appended, was the agent of the present appellant company. On his application, he was examined by a number of physicians at Fort McHenry, and compensation was allowed. He told the physicians at the fort that he had trouble with his chest, pains in the head since his army service, and across the eyes at times, and shortness of breath, especially in the morning, and his application, introduced in evidence, contained the same statements. The confinement to the Franklin Square Hospital, he testified at the trial, was for an operation for hemorrhoids. Payments of his compensation from the Government began, he thought, about three months after he made application for them, which would be at about the end of January, 1930.

On November 11th, 1929, twelve days later, he took out a life policy in the Metropolitan Life Insurance Company for $432, through the agent who later took the insurance now contested. On November 21st, 1919, eight days later, an application was made out and signed by the plaintiff, through the same agent, for $5,000 of life insurance, with a disability clause, in the same company, but the home office of the company declined the insurance on November 25th, 1929. On January 24th, 1930, Schmidt signed an application for accident and health insurance, in the present appellant company, of $70 monthly indemnity and $700 principal sum, and the policy was issued. The statements in that application are the same as those in the application made a part of the contract now sued on, and need not be repeated.

The application embodied in the present policy was made out on March 18th, 1930, for the larger amounts of $90 indemnity and $900 principal sum. It contains the following questions and answers: "Has any application for health, accident, or life insurance ever made by you been declined, or any such policy of insurance cancelled or renewal for insurance of any kind refused by any company, association or society? No. Are your habits of life correct and temperate, and are you in sound condition mentally and physically? Yes. Have you ever had any infirmity, deformity or disease? No. Have you been disabled by either accident or illness, or received medical or surgical attention during the last five years? No. If so, when, for what and duration?"

This last question was unanswered, and four blank spaces for enumerating the times, causes, and durations of disabilities were not filled in.

According to the plaintiff's further testimony he was, while riding in a taxicab to Fort McHenry for treatment on April 8th, 1931, injured in a collision of the cab with a motor truck, and as a consequence has been caused to suffer disabling pains in the head, back, and shoulder, the pains in the head having been constant since the accident. Testimony given on behalf of the defendant tends to deny the existence of any injury. Injury as testified to is the ground of recovery in this case. The defendant company paid the amounts of monthly indemnity during four or five monthts before the validity of the policy was questioned.

The plaintiff, while admitting his signature to earlier applications, including that with the same answers made out for the earlier and smaller policy in the same appellant company, denied that the signature to the application now involved was his. He testified, on the contrary, that to procure this insurance he signed another paper, and not the one copied into the policy. The agent of the company, on the other hand, testified that the plaintiff did sign this application, which was to increase the previous insurance in the

same company. As to the false answers, the plaintiff testified that he knew nothing of what answers were being written by the agent, that the agent was urging him to take the insurance, and filled in the application, and he merely told the agent of his physical troubles, according to the best of his ability, did not participate in any respect in making the false answers, and did not subsequently read them in the original application or in the policy. The agent, on the other hand, while admitting that he knew the falsity of some of the answers, alike in this and in the earlier application for the smaller policy in the same company, testified that he inserted them upon the urging of the plaintiff and the plaintiff's brother, because he knew the plaintiff would not get the policy if the correct statements were made, and the plaintiff and his brother argued that the company would know nothing about it, that they and the agent were friends, and urged that he should put down answers as the plaintiff gave them—"And I did the same, for which I was sorry afterward."

With respect to knowledge of the Metropolitan Company's declining his application of November 21st, 1929, the plaintiff testified that he had never known this, that after having made the application, he told the agent he could not take the insurance. The agent, on the other hand, testified that he told the plaintiff of it at the time the insurance was declined.

Deferring consideration of the question of the plaintiff's participation in these misrepresentations, there can be little need of demonstration of their materiality to the acceptance of the risk by the insurer. They were material if they were such as would reasonably influence the decision on the question whether this man should be insured against loss or disability from accident or ill health, which means, of course, if they were such as would reasonably form a material factor in estimating the chances of loss or outlay on the insurance. *Mutual Life Ins. Co. v. Mullan*, 107 Md. 457, 467, 69 A. 385; *Couch, Insurance*, sec. 885 b. And the question of

materialty is not exactly whether disability of any sort is proved to have existed at the time of making the application, but whether the misrepresentation of the true facts would reasonably have affected the determination of the acceptability of the risk. *Loving v. Mutual Life Co.,* 140 Md. 173, 180, 117 A. 323; *Cooley, Briefs on Insurance,* 1965. Usually it is a question for the decision of a jury, but not always. Whenever in any case it is manifest, from uncontradicted testimony or from the nature of the misrepresentations, that they must have been material to the risk, the court is so to rule as a matter of law. *Bankers'' Life Ins. Co. v. Miller,* 100 Md. 1, 5, 59 A. 116; *Mutual Life Ins. Co. v. Mullan,* 107 Md. 457, 463, 69 A. 385; *Aetna Life Ins. Co. v. Miller* 113 Md. 686, 693, 78 A. 483; *Metropolitan Life Ins. Co. v. Jennings,* 130 Md. 622, 625, 101 A. 608; *Mutual Life Ins. Co. v. Willey,* 133 Md. 665, 669, 106 A. 163; *Stiegler v. Eureka Life Co.,* 146 Md. 629, 637, 127 A. 397; *Mutual Life Ins. Co. v. Held,* 157 Md. 551, 555, 146 A. 755.

To determine the materiality of the misrepresentations in this application, we think we have only to ask ourselves whether an insurer's decision on acceptance of this risk and the issue of insurance of this kind would reasonably have been influenced by the truth that the applicant was a man already disabled, or one who, at least, had successfully claimed disability and was receiving compensation for it from the government, that at his own instance he had been, after the requisite examinations, adjudged disabled by a long standing and increasing ailment, combined with pains in the head which had long been a subject of complaint, and that in point of fact he had received medical attention during the preceding five years for conditions found to justify his receiving the service disability compensation. It seems so clearly manifest that the misrepresentations in these respects were material, that the court should, in our opinion, so rule.

It is argued that the man's chest condition, which was the trouble stated in writing in his army application, does not appear to have had any part in the injury from the automo-

bile collision on which he now claims. Taking this to be true, the fact would not answer exactly the question of materiality to the issue of the insurance in the first place, which is the question here. And conditions already existing, to which the results of an accident would be superadded, would be material to the decision on acceptance or rejection of the risk of accident. In point of fact, one of the ailments of which complaint was made to the army surgeons, and of which the man complained many years ago, according to his testimony, and the testimony of his physician, that is, the pains in the head, is an ailment which in increased form he attributes to the accident. Misrepresentation or concealment of that ailment would seem obviously material to the issue of insurance restricted to accident and injury of exactly the kind now claimed.

As to the principles of law determining the effect, under particular circumstances, of misrepresentations by an insurer's agent, there need be no extended discussion now. If the plaintiff, having made all the disclosure demanded of him, has relied entirely on the agent to inform the insurer of the facts, the knowledge of those facts may be imputed to the insurer, and it may not be permitted to defend on the ground of the agent's fraud, unless there has been participation in it by the applicant. Falsity and materiality in the representations in his application having been established, the plaintiff would have the burden of proving lack of complicity on his part. *Forwood v. Prudential Co.*, 117 Md. 254, 258, 83 A. 169. "An obligation to deal fairly and honestly rests equally upon all the parties to such a contract as this." *Loving v. Mutual Life Ins. Co.*, 140 Md. 173, 185, 117 A. 323, 328; *Stiegler v. Eureka Life Co.*, 146 Md. 629, 637, 638, 127 A. 397; *Globe Reserve Mutual Co. v. Duffy*, 76 Md. 293, 300-302, 25 A. 227; *Eureka-Maryland Assurance Corp. v. Scalco.*, 158 Md. 73, 148 A. 267. The circumstances which will show participation by him, or lack of it, in one case and another, must differ, and courts of the country have differed somewhat on the effect of circumstances proved,

and especially on the effect of indifference or neglect of the applicant as an instrument in the imposition on the insurer. This court in two earlier cases adopted the view of the United States Supreme Court in the case of *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934, and later decisions of other courts, that fair dealing requires of the applicant or insured some care on his own part to see that his application does not misrepresent the facts. *Ryan v. World Mutual Co.,* 41 Conn. 168; *Lewis v. Phoenix Co.,* 39 Conn. 100; *Virginia Fire & Marine Ins. Co. v. Morgan,* 90 Va. 290, 18 S. E. 191; 5 *Cooley, Briefs on Insurance,* 4131, and note; *Globe Reserve Mutual Co. v. Duffy, supra;* and *Forwood v. Prudential Co., supra.* "Assuming that the answers of the assured were falsified, as alleged, the fact would be at once disclosed by the copy of the application, annexed to the policy, to which his attention was called. He would have discovered by inspection that a fraud had been perpetrated, not only upon himself, but upon the company, and it would have been his duty to make the fact known to the company. He could not hold the policy without approving the action of the agents, and thus becoming a participant in the fraud committed." *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519, 6 S. Ct. 837, 844, 29 L. Ed. 934. "And so, where false answers have been written by the agent without the knowledge of the assured, but the latter has the means at hand to discover the falsehood and negligently omits to use them, he will be regarded as an instrument in the perpetration of the fraud, and no recovery could be had upon the policy." *Globe Reserve Mutual Co. v. Duffy, supra,* 76 Md. at page 300, 25 A. 227, 228. Other courts have disagreed with this requirement, but possibly the disagreement is on the effect of particular states of fact. In this case, the decisions quoted seem to be controlling precedents, requiring direction of a verdict for the defendant company.

Taking the testimony on behalf of the plaintiff as true, it must be assumed that the agent urged the insurance upon him, and filled in the application for it, and, for the increased

or final policy now sued on, foisted on his company an application other than one which the plaintiff signed; that the plaintiff did not know of the making of the false answers, because he did not see those in the original forms of application to this company, and did not read the final policy containing them after he had received it. He knew, however, as he must have known, that he was procuring insurance against disability from accident or loss of health, and he did receive the policy, which directed his attention to the application, held it, and paid no attention to it during thirteen months subsequently, and as a consequence was not aware of the falsity in the representations as to his condition, on which the policy was procured. This court is unable to see any ground for distinguishing the case from the earlier cases in which the plaintiff was held to have become a participant by his neglect to perceive and correct the fraud. *Globe Reserve Mutual Co. v. Duffy;* and *Forwood v. Prudential Co., supra.*

For these reasons the court has come to the conclusion that the prayers for direction of a verdict for the defendant should have been granted.

*Judgment reversed, without a new trial, with costs.*