MONUMENTAL LIFE INSURANCE
COMPANY *v.* TAYLOR

[No. 64, October Term, 1956.]

*Decided February 12, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and MACGILL, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*E. Dale Adkins, Jr.,* and *Allen A. Davis, Jr.,* with whom was *Hilary W. Gans* on the brief, for the appellant.

*Hamilton P. Fox, Jr.,* with whom were *Charles E. Hearne, Jr.,* and *James P. Bailey* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by the defendant below, Monumental Life Insurance Company, from a judgment entered on a verdict by a jury in the Circuit Court for Wicomico County in favor of the plaintiff for the sum of eleven thousand, five hundred eighty-six dollars and eighty-five cents ($11,586.85), with interest, after the trial court had overruled the defendant's motions for judgment *n. o. v.* and in the alternative for a new trial.

The action was brought on a life insurance policy, within the contestable period of said policy, by the appellee, plaintiff below, primary beneficiary, against the defendant to recover the face amount of the policy and the commuted value of the family income benefits provided under the same.

At the conclusion of the taking of testimony, the defendant offered proper demurrer prayers that requested directed verdicts in its behalf. As our decision must be based upon whether the trial court's rulings were proper, the evidence must be set forth, somewhat in detail, and in the light most favorable to the plaintiff. Mrs. Taylor, the plaintiff, was called and testified: that her husband's occupation was that of an insurance man; that she and her husband were living in Easton, Maryland, when he took out the policy; that Dr. Palmer was the physician who examined her husband at that time; that proof of death had been furnished the defendant, and demand for the payment of benefits had been made upon it, which was denied; and, the defendant had proffered to refund the premium paid on the policy. Plaintiff also offered the policy of insurance and the certificate and proof of death. In rebuttal plaintiff testified: that prior to the issuance of the policy, the only physicians consulted by her husband, to her knowledge, were Drs. Mattax, Ellis and Gilmore; that he had discussed with her his visits to Drs. Ellis and Palmer; that she did not know of any Doctors' having prescribed nitro-glycerine for him until after his heart attack in 1955; that if any Doctor had prescribed for her husband, prior to 1954,

anything for a heart condition, she did not know anything about it; that her husband had told her the Doctors had given him something for indigestion when he visited Drs. Mattax and Ellis; and, that her husband had told her he told Dr. Palmer of his visit to Dr. Ellis, and he further told her that Dr. Palmer said he could find nothing wrong with him except his nerves. The plaintiff, likewise in rebuttal, offered two letters from Dr. Ellis sent to the defendant, one dated September 21, and the other October 26, 1955. The first stated in substance: the insured was seen in the Doctor's office on September 23, 1952, with the complaint of substernal pain which occurred about a year before, and which was first noticed while walking with heavy packages in New York City, which subsided after he rested; that the pain was pressure-like and was associated with slight dyspnea (shortness of breath); that in September of 1952, insured noticed substernal pain and took nitroglycerine with relief; that his blood pressure was 140/105 and on examination of the chest and heart they showed no abnormalities. The remainder of the letter is a detailed and medically termed report of two electrocardiograms taken at about that time. It is unnecessary to repeat the same, because, in the second letter, the Doctor states the electrocardiograms were normal. (Between the dates of the two letters offered as exhibits by the plaintiff, the Doctor had written a third, defendant's exhibit No. 1, in which he gave his diagnosis (angina pectoris) of the insured as of September 1952, and in his testimony he told the weight to be given a normal recording on an electrocardiogram. We shall refer to this later.) In the second letter offered by the plaintiff, the Doctor also said there was nothing in his records to indicate he had informed the insured he had a heart condition, nor did the Doctor recall that he had told insured that he had a disease of the heart. (The Doctor testified, when called by a witness for the defendant, he thought he had, and to the best of his recollection he had, so informed the insured, but was not certain.) This constitutes the testimony offered by the plaintiff.

The defendant then offered the following testimony, a part of which was disclosed in plaintiff's exhibit, the insurance

policy. On, or about, August 27, 1954, R. Nelson Taylor, Sr. made application to Monumental Life Insurance Company, the appellant in these proceedings, for the issuance of a life insurance policy in the face amount of Five Thousand Dollars ($5,000.00) with a family income rider. Mr. Taylor was referred to Dr. Palmer, a practicing physician in Easton, Maryland, for the purposes of a medical examination. During the course of said medical examination, Mr. Taylor was asked the following questions by Dr. Palmer, who, in turn, recorded the statements made by Mr. Taylor as indicated:

"Question 7. Have you consulted or been attended by any physician in the past five years? Answer: No.

"Question 8. Have you ever had or been told that you had or consulted or been treated by a physician or other practitioner for any of the following: (c) Disease of the heart or blood vessels? Answer: No; (d) Pain in the chest, shortness of breath, coronary artery disease or angina pectoris? Answer: No."

After those answers were recorded by Dr. Palmer on the application, it was signed by Mr. Taylor. Following the medical examination and completion of the questionnaire as indicated, the application was duly processed in the usual course of business and Policy No. 391868 in the face amount of Five Thousand Dollars ($5,000.00) with a family income rider was issued to Mr. Taylor with Catherine V. Taylor, the plaintiff in these proceedings, designated as the primary beneficiary. Thereafter, on September 6, 1955, the insured, Taylor, died, the cause of death as indicated on the death certificate being: "Immediate cause, acute coronary occlusion, interval between onset and death five minutes, antecedent causes, previous coronary sclerosis and infarction, interval between onset and death five months and coronary arteriosclerosis, interval between onset and death three years." Upon the filing of the proof of death with the appellant company, said company was, for the first time, on notice that the decedent had been suffering with coronary arteriosclerosis for a period considerably prior to the issuance of the policy.

During September of 1952, Mr. Taylor called on Dr. Harry Mattax, a general practitioner, practicing in the City of Salisbury, complaining of "intermittent chest pains of a very vague nature", which he did not describe very accurately. After an examination, Dr. Mattax was of the opinion that the pain was either cardiac in origin or was a cardio spasm and he was not able to definitely determine in his own mind which was the proper diagnosis. Accordingly, he recommended to Mr. Taylor that he visit Dr. Wilbur R. Ellis, who was a specialist in the field of internal medicine and cardiology. A few days later, on September 19, 1952, Mr. Taylor visited the office of Dr. Ellis. At the time of the visit, Mr. Taylor advised Dr. Ellis that he had had "chest pains on several occasions" and particularly called attention to a time, approximately a year before in New York City, when he was carrying heavy packages and had developed a chest pain, which caused him to stop walking and upon resting, the pain disappeared. He further advised Dr. Ellis that he was taking nitroglycerine tablets for the relief of this chest pain, which the testimony indicates is a generally accepted remedy normally prescribed for the disease of the heart known as angina pectoris. He also complained of shortness of breath to Dr. Ellis, who made the usual complete examination in cases of this kind, including two electrocardiograms and a ballisto cardiograph, the results of the electrocardiograms were negative, but the ballisto cardiograph showed an abnormality. Following the first visit to Dr. Ellis, Mr. Taylor returned a few days later. Dr. Ellis, in the meantime, had diagnosed Mr. Taylor's condition as angina pectoris and upon the second visit, prescribed a drug known as paveril, which according to Dr. Ellis' testimony is prescribed for patients with angina pectoris and hardening of the arteries of the heart causing angina. In addition to prescribing paveril, Dr. Ellis directed the patient to reduce his diet to that of 1000 calories per day. The doctor was not certain that he had advised Mr. Taylor of his diagnosis but testified that his best recollection was that he did so advise him of this condition. The doctor further testified that very frequently when a patient has angina pectoris the physical examination and the accessory

examinations, including electrocardiograms may show nothing. When this occurs, the doctor has to be guided by his clinical experience and his impression of the patient in determining the existence of angina pectoris.

Both Doctors Ellis and Mattax testified that they were of the opinion, prior to the date of the issuance of the policy, that Mr. Taylor was suffering from angina pectoris, and both further testified that the cause of death was, in their opinion, the direct outgrowth of the condition which Dr. Ellis had first diagnosed in September of 1952.

Dr. Palmer testified on cross-examination the insured had answered "yes" to the three following questions: Have you ever had or been told you had, or consulted or been treated by a physician or other practitioner for any of the following: Stomach or Intestinal trouble, Indigestion, Ulcers, Appendicitis, Gall Bladder or Liver disorder, Jaundice, Dysentery or Hernia; have you ever had treatment, examination or surgical operation of any kind in a hospital or sanitarium; and, is there reason for you to undergo, or do you contemplate a surgical operation. As a result of these answers, the doctor made a notation: "1941 * * * bilateral inguinal hernia. 1946 rt. inguinal hernia repaired. Hope to have the left repaired later". The doctor further testified the insured had told him that the insured had had some trouble with his stomach.

Millard D. Wheeler, Underwriting Supervisor for appellant testified that, had the questions referred to above been answered in the affirmative, the policy would not have been issued without further investigation and inquiry from Dr. Ellis as to his diagnosis and history which he had been given, and without reference to the company's Medical Director, Dr. Vinup. Dr. Vinup, in turn, testified that, had the case been referred to him, had the questions been answered in the affirmative, and had the substance of the examinations of Dr. Mattax and Dr. Ellis been made known to him as would have been inevitable had the case been referred to him, the company would have declined the risk. This evidence of the defendant remains uncontradicted and uncontroverted, except insofar as it can be determined to be so, by the testimony of the plaintiff set forth above.

The appellant claims (1) the answers made to the questions, quoted above, were untruthful representations made in insured's application for insurance, as shown by clear, convincing and uncontradicted evidence, and in law it makes no difference whether they were consciously or unconsciously false; and, (2) the untruthful representations were, in the same manner, established to be material to the risk. The appellee answers these contentions by alleging the answers were neither untruthful nor material, and the decision as to whether they were or not was properly left to the jury.

These questions have been before this Court in two very recent cases: *Hancock Mut. Life Ins. Co. v. Adams*, 205 Md. 213, 107 A. 2d 111; and *Baker v. Continental Casualty Co.*, 201 Md. 464, 94 A. 2d 454. In the first named case, Chief Judge Brune wrote the opinion, and in the latter, Judge Hammond. Both opinions are full and carefully prepared; they painstakingly analyze the previous decisions of this Court on the subject matter under discussion, and they enunciate with clarity and precision the underlying principles of law that are controlling in this case. Both of these cases repeated the following rule which is quoted now from the *Adams* case: "Ordinarily and generally, whether a representation is true or false, or material to the risk, is for the jury to determine, and the burden is on the defendant to establish such defenses. Where, however, bad faith or falsity or materiality is shown by uncontradicted or clear and convincing evidence the question may be one of law. If there is a conflict in the evidence, or the evidence is doubtful, the question is one for the jury." Indeed, it has been stated so frequently in the decisions of this Court since, at least, the case of *Aetna Life Ins. Co. v. Millar*, 113 Md. 686, 693, 78 A. 483, that it is a long and well established rule in Maryland. Chief Judge Bond set it forth in slightly different terms in *Casualty Ins. Co. v. Schmidt*, 166 Md. 562, 569, 171 A. 725, when he stated: "Usually it (materiality) is a question for the decision of a jury, but not always. Whenever in any case it is manifest, from uncontradicted testimony or from the nature of the misrepresentations, that they must have been material to the risk, the court is so to rule as a matter of law." In both the *Baker* and *Adams*

cases, *supra,* the questions were held properly to have been submitted to the juries. The *Baker* case was determined on the question whether it was untruthful to answer that applicant had not been under the *care* of a doctor, when he had been *examined* by one.

In order to disclose the difference between this and the *Adams* case, *supra,* it will be dealt with more in detail. There, the applicant for insurance had stated in his application dated May 19, 1951, that he had never been told that he had, or consulted a physician, for pains in the chest or shortness of breath; that he had not had an electrocardiogram study; and that he had not, during the past five years, consulted any physician or other practitioner. Insured had had pains in the chest in February and October, 1949, and had consulted a physician on both occasions, and at one of these an electrocardiogram was taken. He had also consulted doctors on numerous occasions about various ailments within five years prior to his application, and these consultations were not disclosed in the application. The opinion pointed out that the testimony of the physicians, whom he had consulted during the five year period indicated that most of his ailments were not of a serious nature and failure to disclose consultations with physicians for minor ailments will not avoid a policy of insurance such as there involved; the electrocardiogram was negative and the doctor, whom the insured had consulted, did not think the insured had heart trouble; that insured's first known heart attack occurred after the application (an analysis of the evidence leaves serious doubt as to whether or not the applicant had heart trouble at the time of the application); and, that there was serious conflict in the testimony, thus, bringing the case clearly within that class where truth and materiality should be submitted to the jury. See also *Dulany v. Fidelity & Casualty Co.,* 106 Md. 17, 66 A. 614; *Mutual Life Ins. Co. v. Rain,* 108 Md. 353, 70 A. 87; *Great Eastern Casualty Co. v. Schwartz,* 143 Md. 452, 122 A. 647; *Mutual Life Ins. Co. v. Held,* 157 Md. 551, 146 A. 755.

There is no doubt that a material misrepresentation made by an applicant for life insurance, in reliance on which a policy is issued to him, avoids the policy, whether it be made inten-

212

tionally or through mistake and in good faith. *Hancock Mut. Life Ins. Co. v. Adams, supra.* So, it will be unnecessary to consider the question of possible bad faith in determining the truthfulness of the representations or their materiality.

In the case at bar, it is uncontradicted in the record that certain representations relied upon by the appellant were in fact untrue, and in part at least, were known to be untrue by the insured. It is our duty to determine whether they were untrue as to material matters of fact, as a matter of law. He stated he had not consulted or been attended by any physician in the last five years, and that he had never had or consulted or been treated by a physician for a disease of the heart or blood vessels, pain in the chest, shortness of breath, coronary artery disease or angina pectoris. It is undisputed and uncontroverted, indeed the plaintiff admitted, that the insured had consulted Drs. Mattax, Ellis and Gilmore within a period of five years from the date of the application. Unlike the *Adams* case, *supra,* Dr. Mattax, a professional man whose qualifications were admitted, thought the insured was suffering from a heart condition; and Dr. Ellis, a specialist in cardiology whose qualifications were likewise admitted, had diagnosed his ailment as angina pectoris and *had actually treated him for it.* This was no minor ailment. Two doctors testified, in their opinion, it was the cause of his death. And it immediately removes the case from the rule that the failure to disclose consultations with physicians for minor or temporary ailments does not void a policy of the nature herein involved. When one of the other rules mentioned above, namely, that material misrepresentations made by an applicant, in reliance on which a policy is issued to him, avoids the policy whether it be made intentionally, or through mistake and in good faith, is applied, the above alone, when uncontradicted, is clear and convincing evidence that the representation was untruthful in law and as a matter of law.

But this is not all. It was likewise uncontradicted that the insured had consulted and been treated by two physicians for pain in the chest and shortness of breath; and was taking nitroglycerine tablets, a medication that can only be obtained by a prescription and which the average person knows is a

palliative for pain resulting from angina pectoris, when he first consulted Dr. Ellis. Without further laboring the question, we hold the evidence is so clear and so overwhelmingly convincing, that the misrepresentation was untruthful as to a material matter of fact, as a matter of law. For previous cases that have held truthfulness and/or materiality were questions of law, see *Bankers' Life Ins. Co. v. Miller,* 100 Md. 1, 59 A. 116; *Mutual Life Ins. Co. v. Mullan,* 107 Md. 457, 69 A. 385; *Forwood v. Prudential Ins. Co.,* 117 Md. 254, 83 A. 169; *Met. Life Ins. Co. v. Jennings,* 130 Md. 622, 101 A. 608; *Loving v. Mut. Life Ins. Co.,* 140 Md. 173, 117 A. 323; *Casualty Ins. Co. v. Schmidt, supra; Life Ins. Co. v. Samis,* 172 Md. 517, 192 A. 335.

The rule with reference to materiality in cases of this kind is not exactly "* * * whether disability of any sort is proved to have existed at the time of making the application, but whether the misrepresentations of the true facts would reasonably have affected the determination of the acceptability of the risk." *Casualty Ins. Co. v. Schmidt, supra.* See also *Hancock Mut. Life Ins. Co. v. Adams, supra; Silberstein v. Mass. Mut. Life Ins. Co.,* 189 Md. 182, 55 A. 2d 334. In addition to the direct and positive evidence of the proper officials of the appellant that had the true facts been known the risk would not have been accepted, it is widely and generally known and accepted that the ailment, as diagnosed by Dr. Ellis, would have reasonably affected the determination of the acceptability of the risk. There is no doubt that the misrepresentations above mentioned were material.

Appellee contends that the appellant is estopped from denying liability under the policy by reason of the disregard of its examining physician of certain instructions from the appellant that if followed would have disclosed insured's visits with Drs. Mattax and Ellis. In this contention, we are unable to discover any merit. In the first place, the evidence fails to disclose that Dr. Palmer did not carry out his instructions properly. And if we assume, without deciding, the doctor did not carry out his instructions in minute detail, the appellant would not be estopped if the insured had the means at hand to discover this failure and negligently omitted

to use them. The policy was delivered to the insured shortly after its issuance and held until his death. *Casualty Ins. Co. v. Schmidt, supra; Globe Res. Life Ins. Co. v. Duffy,* 76 Md. 293, 301, 25 A. 227; *Insurance Co. v. Main,* 140 Md. 220, 117 A. 571; *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519, 29 L. Ed. 934.

From what has been said above, we hold the appellant's demurrer prayer A should have been granted. In this regard, it should be noted appellee refused the tender of the return of the premiums paid, to which she is still entitled.

> *Judgment reversed, and judgment entered for the defendant below, with costs.*