PHENIX INS. CO. OF BROOKLYN v. WILCOX & GIBBS GUANO CO.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

No. 99.

1. CONTRACTS—INTERPRETATION—PARTY DRAWING CONTRACT.

The P. Insurance Co. issued to the W. Co. a policy of insurance against loss by windstorms or cyclones. In addition to the printed parts of the policy, there was written upon its face, "Subject to coinsurance clause," and "Subject to freshet clause." Over the latter inscription was pasted a printed slip, excepting from the policy any damage by freshet. There was no slip, over the inscription relative to coinsurance, upon the policy when produced in court. In the body of the policy was a clause providing that, if there were other insurance on the property, the P. Co. should only be liable for such proportion of the loss as its policy bore to the whole whole amount of insurance. There having been a total loss, the P. Co. claimed that it was liable only for such proportion of the face of the policy as that bore to the sound value of the property, alleging that a slip had been or should have been attached to the policy limiting its liability in that way. The W. Co. denied any knowledge of such slip or such agreement. The agent of the insurance company who effected the insurance testified that he had intended to attach to the policy a particular printed slip, headed "Average or Coinsurance Clause," limiting the liability of the insurance company, in case of "fire," to the proportion of the policy which its face bore to the sound value of the property, and to change the word "fire" to "loss," and that he had explained this provision to the son of the manager of the W. Co. when the first policy, of which the one in suit was a renewal, was taken out, and that it had been assented to by the son, after consulting his father. The manager of the W. Co. and his son denied that there had been any such explanation. It appeared that the first policy bore the printed slip, with the word "fire" unchanged. It also appeared that various clauses, called "coinsurance clauses," varying in terms, were in use by different insurance companies. No evidence was given of any usage as to the meaning of the words. *Held,* that the jury were rightly instructed that, if there was a doubt as to the meaning of the contract, it should be construed most strongly against the insurer.

2. SAME—"COINSURANCE CLAUSE."

*Held,* further, that the words "subject to coinsurance clause" had no definite meaning in themselves, and that the defendant could not complain of an instruction that, if the jury found the contract incomplete, they were to ascertain what was left out which, if inserted, would have explained or varied the terms of the policy.

3. SAME—EVIDENCE OF ORAL UNDERSTANDING TO VARY WRITING.

*Held,* further, that the evidence as to the intention of the agent and the previous verbal understanding was incompetent, since in an action at law the court could only consider the actual terms of the contract; but,

it having been received, the insurance company could not complain of an instruction that such an understanding must have been between persons authorized to bind the respective parties, and that if the slip containing the word "fire" had been attached it would have been meaningless in case of a loss by cyclone.

In Error to the Circuit Court of the United States for the District of South Carolina.

This was an action by the Wilcox & Gibbs Guano Company against the Phenix Insurance Company of Brooklyn, N. Y., on a policy of insurance. The action was commenced in a court of the state of South Carolina, and was removed by the defendant to the federal court. A motion by plaintiff to remand was denied (60 Fed. 929), and another motion by plaintiff to strike out part of defendant's answer was granted (61 Fed. 199). Upon the trial judgment was rendered for the plaintiff. Defendant brings error.

This was an action at law brought by the Wilcox & Gibbs Guano Company against the Phenix Insurance Company to recover on a policy against loss by windstorms, cyclones, or tornadoes on property damaged by the cyclone which prevailed at Charleston, S. C., on the 27th and 28th of August, 1893. The material portions of the policy are as follows: "By this policy of insurance the Phenix Insurance Company, of Brooklyn, N. Y., in consideration of thirty-eight dollars, do insure the Wilcox & Gibbs Guano Co. against loss or damage by windstorm, cyclone, or tornado to the amount of sixty-five hundred dollars, as follows: $2,000 on their wharf and tramway thereon, subject to coinsurance clause; $1,500 on 3-story tin-roof mill building and shed on north side, adjoining and communicating; $1,500 on 1-story frame tin-roof warehouse, adjoining and communicating on south side of their premises; $1,500 on 1-story frame tin-roof warehouse on north side of their premises,— all of the above situated east side of Concord street, foot of Hasel street, Charleston, So. Ca. Subject to freshet clause." The words "subject to coinsurance clause" and the words "subject to freshet clause" were written and not printed upon the policy. Immediately over the words "subject to freshet clause" there was a printed slip pasted to the margin of the policy, reading as follows:

"It is hereby distinctly understood and agreed that this company is not liable for any loss or damage to the property herein insured which may occur by reason of freshets, floods, or high water; said insurance being limited to loss or damage by cyclone, windstorm, or tornado. Attached to and forming part of tornado policy No. 953 of Phenix Insurance Co.

"[Signed]                                    S. Y. Tupper & Sons, Agents."

In the policy produced and put in evidence by the plaintiff there was no slip attached over the words "subject to coinsurance clause." The particular subject-matter of insurance drawn in question is the item, "$2,000 on their wharf and tramway thereon, subject to coinsurance." It was conceded that the damage was caused by the cyclone, and that the damage to the wharf and tramway had been rightly ascertained by arbitration to be $2,510.68, and the sound value of the wharf and tramway before the damage to be $3,529.50. The question litigated was whether under the policy the insurance company was liable for the full amount insured, viz. $2,000, or only for such proportion of the loss as the amount of the insurance bore to the sound value of the property. In the one case the plaintiff would be entitled to recover the full amount insured, viz. $2,000; in the other, only about $1,420.

The general manager of the plaintiff company testified that he first effected cyclone insurance for one year with this defendant company to cover the same risks two years before the date of this policy; that each was an annual policy, and upon each renewal he received a new policy; that he had never had his attention called to the coinsurance clause by any one before the loss; that the business was in the first instance solicited by Mr. Tupper, the agent of the insurance company, and that nothing was said about the conditions; and that about the time of the expiration of each policy the agent asked if

the insurance was to be continued, and upon getting an affirmative reply sent a new policy. Upon cross-examination he was asked if he had ever seen a printed slip like this: "Average or Coinsurance Clause. Charleston, So. Ca., ——, 188—. It is understood and agreed that, in case of loss under this policy, the company shall be liable only for such proportion of the whole loss as the amount of this insurance bears to the cash value of the whole property hereby insured at the time of the fire. Attached to and forming part of policy No. —— of the —————— Insurance Company. ——, Agent." He said he had examined the first policy since this suit was instituted, and it had on it such a slip, with the word "fire" in it; that he had lost the other expired policies, and did not know whether they had such a slip; and that the policy in suit never had such a slip on it.

On behalf of the defendant, Mr Tupper, the agent of the insurance company, testified that the insurance was originally, in 1890, applied for by the son of the manager of the plaintiff company; that witness told him the whole insurance would have to be subject to the freshet clause, and the wharf and tramway subject to the coinsurance clause, and showed the printed slip, and explained to him how in case of loss the calculation would be made, and the son said he would consult his father, and afterwards he came back and said he would accept the insurance; that witness was confident the printed slip had been attached to the other policies; if it was not attached to this one, it was an oversight of his clerk; that the slip intended to be attached was a printed slip similar to the slip above set out. The son of the agent of the plaintiff company, on cross-examination, denied that he ever had the meaning of the coinsurance clause explained to him, or ever had any conversation or knowledge about the intention to put that clause in the policy, or any condition as to coinsurance. It was shown that there were other printed slips in use by underwriters to be attached to policies which were called "coinsurance clauses," some requiring not less than 75 per cent., and some not less than 50 per cent., of the sound value to be insured, and by failing to do so the assured becomes a coinsurer to the extent of the deficiency. The testimony with regard to the particular coinsurance clause which the agent of the insurance company claimed to have explained to the son of the plaintiff company's manager, and intended to be attached to the policy, was objected to by the plaintiff, and his objection overruled. There was in the body of the printed policy a clause as follows: "In case there shall be any other tornado insurance on the property hereby assured, whether valid or not, the assured shall recover of this company only such proportion of the loss as the sum hereby insured thereon shall bear to the whole amount of insurance."

The court, inter alia (Simonton Circuit Judge), instructed the jury as follows: "(1) The policy is a contract between the parties, and in construing this contract, if there be any doubt of its construction, the doubt should be solved in favor of the insured. Policies are prepared by the companies themselves, and are generally of a stereotype form and character, and as a general rule are never examined by the insured until the loss occurs, and are delivered frequently after the premium has been paid." To this instruction the defendant excepted, contending that the tendency of such instruction was to impress the jury that unless the plaintiff examined the policy before the loss it would not be strictly bound by its provisions, terms, and conditions, whereas the acceptance of said policy by the defendant, without examination, operated as an assent on its part to all the conditions and provisions therein contained.

The court further instructed the jury as follows: "(2) Is this policy, as proved in this case, the contract between the parties? Was it prepared by the insurance company, and delivered by its agent to the insured, and by the latter received and accepted as a complete contract, or was there something left out, which both parties agreed and understood should be put in, which would explain and vary the terms of the policy?" To this instruction the defendant excepted, contending that the court thereby held, and so impressed the jury, that the printed slip upon which the coinsurance clause was written was introduced to vary the terms of the policy, whereas it was offered only to explain the terms "subject to the coinsurance clause," written into and forming part of the contract of insurance.

The court further instructed the jury as follows: "(3) I call your attention to the fact that there does not appear in the evidence any clause claimed to be omitted from the policy but that one Mr. Bryan has read. I understand that it is claimed that a clause like that had been in the previous policies, and was omitted from this one. This clause is as follows: 'Average or Coinsurance Clause. Charleston, So. Ca., ———, 188–. It is understood and agreed that, in case of loss under this policy, this company shall be liable only for such proportion of the whole loss as the amount of this insurance bears to the cash value of the whole property hereby insured at the time of the fire. Attached to and forming part of policy No. —— of the ——— Insurance Company. ———, Agents.'" To this instruction the defendant excepted, contending that the court thereby withheld from the consideration of the jury the expert testimony of Mr. Tupper as to the meaning of the term "coinsurance clause," and his further testimony that said clause as explained by him was intended to have been attached thereto, in which slip the word "fire" was stricken out, and "loss" inserted in lieu thereof.

The court further instructed the jury as follows: "(4) If this slip: 'Average or Coinsurance Clause. Charleston, So. Ca., ———, 1888. It is understood and agreed that, in case of loss under this policy, this company shall be liable only for such proportion of the whole loss as the amount of this insurance bears to the cash value of the whole property hereby insured at the time of the fire. Attached to and forming part of policy No. —— of the ——— Insurance Company. ———, Agents,'—was on the policy now, as it is claimed that it ought to have been, it would not affect this case at all. It relates to an entirely different risk; this is a cyclone risk, and this slip relates to a risk by fire." To this instruction the defendant excepted, contending that the court thereby gave the jury to understand defendant's claim to be that a clause like that read by the court had been attached to previous policies, whereas the clause claimed by defendant to have been attached to previous policies contained the word "loss" instead of "fire"; and, further, that the court thereby gave the jury to understand defendant's claim to be that the slip, as read by the court, should have been attached to the policy, and whereas defendant's claim was that the clause, as explained by Mr. Tupper, should have been attached to the policy under which clause the assured became a coinsurer with the defendant in the event of loss by a cyclone. And in so charging the court further erred, in this: that if the slip, as read by him, had been attached to the policy, it should not have been held to relate to a fire risk, but should have been construed by the court in pari materia with the terms of the policy, so as to give its true effect to the clause, which was a provision for coinsurance between the assured and insurer in case of loss under the policy.

The court further instructed the jury as follows: "(5) What do the words 'subject to the coinsurance clause' mean? Do they refer to the coinsurance clause used in the latter part of this policy in regard to insurance in other insurance companies? If it does not, there is no evidence before you except this printed slip: 'Average or Coinsurance Clause. Charleston, So. Ca. ———, 1888. It is understood and agreed that, in case of loss under this policy, this company shall be liable only for such proportion of the whole loss as the amount of this insurance bears to the cash value of the whole property hereby insured at the time of the fire. Attached to and forming part of policy No. —— of the ——— Insurance Company. ———, Agents,'—of any other coinsurance clause to which they referred. Suppose, for a moment, it did refer to a coinsurance clause, which one of the coinsurance clauses does it refer to? You have seen a number of them produced before you. Which one of them can you say was the coinsurance clause? No one can tell, and you, being in that position, I think you may dismiss that point from your minds." To this instruction the defendant excepted, contending that under said instruction the jury was prevented from considering the testimony of Mr. Tupper, who, in the capacity of an expert witness, had explained the words "coinsurance clause" as used in the policy to refer to coinsurance to the full value of the property, as contradistinguished from a limited coinsurance, or a coinsurance to the extent only of a specified percentage of the property's value.

The court further instructed the jury as follows: "(6) Upon the point of

Mr. Tupper's explanation to you of what he thought the coinsurance clause was,—what he understood by the coinsurance clause,—if he referred to this paper: 'Average or Coinsurance Clause. Charleston, So. Ca., ——, 1888. It is understood and agreed that, in case of loss under this policy, this company shall be liable only for such proportion of the whole loss as the amount of this insurance bears to the cash value of the whole property hereby insured at the time of the fire. Attached to and forming part of policy No. —— of the —— Insurance Company. ——, Agents,'—and was construing this paper. it does not affect this policy at all. If, however, he explained the coinsurance as explained by insurers, then you must see some evidence that that was given to the Wilcox & Gibbs Co., and that that company concurred with those instructions,—that construction of the risk,—and that the evidence of assent on the part of the Wilcox & Gibbs Co. must appear to have been given by such a one who occupied a position in the company that would entitle him to make and alter contracts for them." To this instruction the defendant excepted, contending that by such instruction the defendant was required to prove actual communication to the Wilcox & Gibbs Guano Company of the meaning attached to said clause, and a positive assent thereto by some one authorized to make and alter contracts for said company, whereas the court should have charged that if the jury believe the words of the policy "subject to coinsurance clause" to have the fixed technical meaning in the business of insurance as explained by Mr. Tupper, and that the policy was duly delivered to and received by the plaintiff company without objection or inquiry as to the meaning of the words in question, the said company was bound by the coinsurance clause as explained by the defendant as fully as though said clause had been personally explained by the insurer, and assented to by the insured, at the inception of the risk.

The jury found for plaintiff the full amount of its claim as fixed by the arbitrators, with interest, including the entire loss upon the wharf and tramway.

George M. Trenholm, for plaintiff in error.

J. P. K. Bryan, for defendant in error.

Before GOFF, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

MORRIS, District Judge (after stating the facts). The question of law raised by the defendant's exceptions in this case is, what is the effect of the words "subject to coinsurance clause" in the policy of insurance in the item of $2,000 on their wharf and tramway thereon "subject to coinsurance clause," and what was the legal effect of the testimony of the agent of the insurance company with regard to it? The condition which the defendant contended was imposed upon the policy by these words was a restrictive condition, depriving the assured of something to which it was entitled under the general terms of the policy. Such restrictions are to be taken most strongly against the party for whose benefit they are intended. Palmer v. Insurance Co., 1 Story, 360, Fed. Cas. No. 10,698; First Nat. Bank v. Hartford Fire Ins. Co., 95 U. S. 673, 678; Thompson v. Insurance Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019. It devolves upon such party to express the restriction in language which conveys the meaning intended. The party who accepts the policy should be informed by it what is the contract for which he has paid the premium and upon which he relies for indemnity. Ang. Ins. §§ 20–22.

We can see no ground for the defendant's first exception, which is to the court's instruction that, if there was doubt as to the construction of the policy, it should be solved in favor of the assured, and we can see nothing in the instruction to mislead the jury.

The meaning of words which have a special trade or technical significance, or clauses in a policy which are ambiguous or indeterminate, may be explained by usages which are so general, uniform, or notorious that the party to be bound may be presumed to have known them. But no evidence of any usage was offered which would tend to explain the meaning of "subject to coinsurance" or "subject to coinsurance clause." The only witness for the defendant was its local agent at Charleston. He did not testify to any usage, but simply to his understanding of these words in this policy. He further testified that the policy, if delivered without the coinsurance clause, which he had intended to attach to it and which he had attached to prior policies on the same risk, was incomplete, showing that the policy was not relied upon as expressing the contract he had intended the company should make, but that contract would have been expressed in the clause which he alleged had been attached to earlier policies, and which would have been attached to this but for the oversight of his clerk. It appeared, further, from the evidence, that there were various coinsurance clauses which are attached to policies by different underwriters, some requiring the assured to become coinsurers for the deficiency if the insurance did not amount to 75 per cent. of the whole value of the property, and others stating a different percentage. It further appeared that the clause which the insurance agent would have affixed to the policy, if he had completed it as he had intended, was a printed clause applicable to a loss by fire, and not a loss by cyclone. It would appear, therefore, as the words "subject to coinsurance clause" had no definite meaning in themselves (unless they applied to the coinsurance clause contained in the body of the policies with reference to other insurance), and had no definite meaning by usage, but referred to some particular clause which the company's agent intended to affix, that the court committed no error of which the defendant can complain in saying to the jury that if they found the policy not a complete contract they were to ascertain what it was that was left out, and which, if inserted, would have explained or varied the terms of the policy as delivered. The court then called the attention of the jury to the fact that, if the very clause had been attached which the insurance agent testified had been omitted, it was one which was applicable only to a loss by fire, and instructed them that it would not have affected this loss, which was by cyclone.

It does not appear that there was any error in this instruction of which the insurance company can complain. Unless there was some restriction by which the assured was prevented, it was entitled under the general terms of the policy to the whole sum insured. The insurer claimed that the restriction was contained in the words "subject to coinsurance clause" of themselves. We think the court right in holding this not to be so, and that the words had no definite meaning. The insurer was then (against the objection of the plaintiff) allowed to explain what was the clause it would have attached but for an oversight. Surely the defendant could not ask to be placed in a better plight than if the policy had been completed as was intended. Attention had been called to the fact that the

printed slip had reference to fire, but the agent's testimony was clear that it was the slip he had attached to fire policies which he intended to attach to this. Treating the policy as if the slip was there, the defendant asked the court to say that it was not to have its literal meaning, but was to be construed contrary to its obvious meaning, in order to make it consistent with a verbal agreement alleged to have been had with the assured two years before this particular policy was issued. This certainly is not the rule in an action at law. If the slip had been attached to the policy when delivered, and by mistake failed to express the actual agreement, a court of equity was the only jurisdiction in which the policy could be reformed and corrected. Insurance Co. v. Mowry, 96 U. S. 547; Graves v. Insurance Co., 2 Cranch, 419; Andrews v. Insurance Co., 3 Mason, 6, Fed. Cas. No. 374. The policy as delivered and accepted is conclusively presumed, in an action at law, to express the entire contract of the parties. Insurance Co. v. Mowry, 96 U. S. 547. If the slip intended had been attached to the policy, there would have been no room for construction; the insurer would have used the word "fire," and would have been presumed to have meant "fire." The court, then, in substance, told the jury if they should find that this particular slip with the word "fire" on it was not the one intended to be attached, but some other, then the evidence left it doubtful which other slip was intended, as the various slips produced showed there were several of different import in use. This instruction was entirely justified by the testimony.

The sixth exception was to that part of the charge which instructed the jury that, in order to bind the defendant by the special meaning which the agent of the insurance company contended he had explained in the original negotiation to be the import of insuring the wharf and tramway "subject to coinsurance," the jury must find that this explanation was made to some person whose connection with the plaintiff corporation was such that he had authority to make and alter contracts on its behalf. In this policy the words "subject to coinsurance clause" would seem to import that there was some clause, either in the policy or to be attached thereto, by which coinsurance was to be regulated and the contract controlled either as to the extent of the risk or the basis of the settlement of the loss. This idea is favored by the provision "subject to freshet clause," and the attaching of a clause with regard to freshets to form a part of the policy. There was no evidence sufficient to submit to the jury to find that the words "subject to coinsurance" had any fixed technical meaning in the business of insurance. By the special explanation claimed to have been made to Mr. Murphy, Jr., before the first policy was issued, it was attempted to interpret the contract in such a manner as to add to it a clause which it did not contain, or else to show that the policy did not express the previous verbal understanding. If this could in any case be permissible, it would seem that the understanding which was to control the written contract should be between persons authorized to bind the parties to the contract. But, in our opinion, these verbal explanations, no matter to whom made, were incompetent testimony

for this purpose. The testimony might have been admissible in an equity suit to correct the policy, if there was a mutual mistake or omission, but was not proper to be considered by the jury in this suit. It was an attempt to prove a parol understanding prior to issuing the policy, thus giving meaning to words in it which of themselves expressed nothing; not to explain a latent ambiguity, but to insert a clause by giving the oral understanding of the parties as to something which should be in the policy for the benefit of the insurer, but was not there. It is obvious, therefore, that the instruction to which the sixth exception applies could not be prejudicial to the defendant. We find the whole charge was sufficiently favorable to the defendant, and that there is no error of which it can complain. The judgment is affirmed.